784 So.2d 806 (2001)
Warren SMITH
v.
NEW ORLEANS POLICE DEPARTMENT.
No. 2000-CA-1486.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 2001.
*807 Franz L. Zibilich, Chief Deputy City Attorney, Mavis S. Early, City Attorney, Joseph V. DiRosa, Jr., Deputy City Attorney, New Orleans, Counsel for Defendant/Appellant.
Court composed of Judge MIRIAM G. WALTZER, Judge TERRI F. LOVE and Judge DAVID S. GORBATY.
WALTZER, J.

STATEMENT OF THE CASE
Appellant, the New Orleans Department of Police (NOPD), appeals from a 31 May 2000 decision of the Civil Service Commission of the City of New Orleans (the Commission) reducing a five day suspension for neglect of duty imposed by the NOPD Superintendent on Officer Warren D. Smith.
We reverse and reinstate Officer Smith's original discipline.

STATEMENT OF FACTS
On 18 December 1998, Officer Smith appeared pro se before the Civil Service Hearing Examiner to appeal his five day suspension from NOPD. NOPD counsel advised the examiner that Officer Smith responded to a shoplifting incident, and allegedly failed to conduct a complete investigation and neglected duty for failure to write up a police report and confiscate surveillance tapes showing the alleged perpetrator fleeing the scene.
Officer Smith testified that he had been a police officer for four years and was presently assigned to the Seventh District. He enumerated the following previous disciplinary actions that had been taken against him:
1. 1995: one day suspension for neglect of duty under Rule IX;
2. 1996: ten day suspension for neglect of duty;
3. 1999: pending case involving a thirty day suspension for neglect of duty.
Officer Smith testified that on the evening of 21 January 1998 he responded to a call of 67-S, a shoplifting incident, at a Walgreen's drugstore. He was in a one man car at the time and did not have a partner. A day watch car, with Officers Thompson and Moore on duty, had been dispatched to the drugstore on a Code 2, priority, call. Officers Thompson and Moore responded and spoke to a witness and the store manager. They did not prepare a report of their investigation. After these officers cleared the scene they advised that a report would be made by a "night watch" car. This night watch car was Officer Smith's. Officer Smith did not interview them concerning their investigation of the incident because he did not believe such an interview would have been helpful.
Upon arriving at the drugstore, Officer Smith located the manager who advised him that a subject had removed some items from the display shelf and had run out of the store. The manager showed *808 Officer Smith a videotape of a subject running out of the store, with the manager running after him; the tape did not show the actual theft. Officer Smith did not take custody of the videotape, in the belief that it had no evidentiary value.
Officer Smith asked the manager for his identification in order that he could write his report. The manager then told him, "Well, no, never mind. I don't want a report written."
At that time, Officer Smith received a 10-55 call across the radio, alerting him to an officer elsewhere in need of assistance. Officer Smith advised the manager that if he wanted a report, he would be glad to come back and take one.
Officer Smith testified that he did not "clear it," but went to the scene of the 10-55 call. After he left that scene, he advised his dispatcher that the drugstore incident was a "21-NAT", meaning necessary action had been taken, and the store manager had not wished for a report to be written. Officer Smith was unaware that there was a witness to the incident other than the store manager.
Three or four days after the theft, Officer Smith became aware that someone had filed a complaint as a result of the incident. As a result of the complaint, the NOPD imposed a five day suspension on Officer Smith. A commander's hearing before Captain McSwain sustained the five day suspension.
The civil service hearing was recessed and resumed on 19 January 1999. Sergeant Richard Taggert of the Seventh District A platoon testified that he was assigned Officer Smith's case by Lieutenant Van Dalen of the NOPD Seventh District.
Officer Taggert began his initial investigation by reviewing documentation from NOPD's Police Integrity Division (PID). According to the PID report, Mr. Fisher initiated the complaint. Officer Taggert interviewed Mr. Fisher, a witness to the incident, who did not wish to pursue the complaint and signed a form dropping the charges. Officer Taggert then spoke with the drugstore manager, Mr. Botley, on whose statement Officer Taggert based his investigation. He also interviewed Officer Smith.
Officer Taggert concluded that Officer Smith was at fault in having failed to prepare a report on the shoplifting incident. According to Officer Taggert, in the case of a UCR category crime of theft, when faced with an uncooperative manager of the victim store, an investigating officer should change the signal to "21", a miscellaneous incident, and document the incident, stating the manager refused the report. This documentation would be similar to the shoplifting incident report. Officer Taggert did not indicate directly or indirectly that the miscellaneous incident report was not an "incident report". Officer Taggert testified that Officer Smith should have called his ranking officer concerning the incident and the manager's refusal to cooperate in the preparation of the shoplifting incident report. Officer Smith's actions were contrary to established police procedure.
Officer Taggert testified that the initial complaint from the witness concerned Officers Thompson and Moore, and that in all likelihood the witness had left the scene prior to Officer Smith's arrival.
Captain Lonnie H. Swain of the Seventh Police District testified that he conducted the Commander's hearing on the charges levied against Officer Smith. Captain Swain insisted that Officer Smith had an obligation to document the shoplifting, whether or not the manager wanted the report. Captain Swain said his recommendation of a five day suspension was made after his review of the facts and *809 of Officer Smith's discipline record. In connection with Captain Swain's testimony, NOPD placed in evidence the disciplinary letter of 15 July 1998 issued by NOPD Superintendent Richard Pennington to Officer Smith. The letter noted the following factual finding:
[O]n January 21, 1998, at 7:13 PM, while at 9999 Lake Forest Blvd., you failed to write an incident report on a shoplifting incident, and also failed to confiscate a surveillance tape of the incident which captured the actions of the perpetrator.
The letter referred to the 15 June 1998 hearing before Captain Swain and concluded that at that hearing Officer Smith "offered nothing which would tend to mitigate, justify or explain [Officer Smith's] behavior." The Superintendent concluded, after what the letter describes as his "thorough and complete review of the entire investigative report," that the noted conduct constitutes a neglect of duty as defined in NOPD Rule 4 and Rule IX, Section 1, paragraph 1.1 of the Rules of the Commission.
NOPD Rule 4 defines neglect of duty as failure to perform the duties or assume the responsibilities of an officer's grade and assignment. Civil Service Rule IX provides in pertinent part that when a classified employee is unable or unwilling to perform his duties in a satisfactory manner or has omitted to perform any act it was his duty to perform, the appointing authority shall take action warranted by the circumstances. This action may include, inter alia, suspension without pay not exceeding one hundred twenty calendar days.
The Superintendent approved the penalty recommended by Captain Swain of a five working day suspension and advised Officer Smith of his right to appeal the decision to the Commission. The letter concludes, "You are also advised that any future violations of a similar nature will result in far more severe disciplinary action taken by this office."
The Commission reviewed the transcript of the December, 1998 and January, 1999 hearings, together with the documentary evidence. It made the following findings:
1. Officer Smith investigated a shoplifting complaint at a drug store and viewed videotape showing the perpetrator running from the store. At this point, Officer Smith intended to prepare an incident report.
2. The store manager did not want a report. Consequently, Officer Smith called in the report as "necessary action taken; the store does not want a report."
3. NOPD acknowledged that the store manager's lack of cooperation impeded Officer Smith's ability to prepare the report and that the officer provided justification for not having taken an incident report.
4. Sergeant Taggert, who investigated the incident, and Captain Swain, who recommended the discipline, opined that Officer Smith should have documented the incident to protect himself, and that he could have prepared a miscellaneous report indicating that the complainant did not want an incident report. However, the disciplinary letter charges Officer Smith with failure to prepare an INCIDENT report, not with failure to prepare a MISCELLANEOUS report.
5. Absent a showing that NOPD had counseled Officer Smith to document every incident in anticipation of a later complaint, NOPD failed to establish that Officer Smith neglected his duty by failing to prepare the incident report.
6. The surveillance tape was relevant identification evidence and Officer Smith should have collected it. Thus, Officer Smith neglected his duty by failing to confiscate *810 the tape and the appeal is dismissed as to this claim.
Based on these findings, the Commission reduced Officer Smith's suspension to two working days and restored all pay and emoluments except for the remaining two days of suspension.

STANDARD OF REVIEW
It is an elementary and timehonored principle that in judging the correctness of the Commission's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the court should not modify the Commission's order unless it is arbitrary, capricious or characterized by an abuse of discretion. Jones v. Louisiana Department of Highways, 259 La. 329, 338, 250 So.2d 356, 359 (1971); Walters v. Department of Police of City of New Orleans, 454 So.2d 106, 114 (La.1984). "Arbitrary or capricious" means there is no rational basis for the action taken by the Commission. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647. The judicial review function is not so limited only with respect to the Commission's decisions as to jurisdiction, procedure and interpretation of laws and regulations. Walters v. Department of Police of City of New Orleans, 454 So.2d at 113.
In reviewing the Commission's findings of fact, the court should not reverse or modify such a ruling unless it is clearly wrong or manifestly erroneous.
We are likewise mindful of the historical context of the introduction of the Civil Service System as a replacement for the political spoils system. Civil service provisions are not penal in nature, but are designed to eliminate the system of appointment to and retention in public service based solely on political considerations, by establishing in its place a system based on merit and achievement. Gervais v. New Orleans Police Department, 226 La. 782, 786, 77 So.2d 393, 394 (La.1954). ASSIGNMENT OF ERROR: The Commission acted arbitrarily and capriciously and committed clear error in reducing the 5-day suspension imposed by the Superintendent of the New Orleans Police Department and exceeded its constitutional authority by substituting its judgment for that of the appointing authority.
The authority of both State and City Civil Service Commissions is derived from Article X of the Louisiana Constitution, "Public Officials and Employees," Part I "State and City Civil Service," section 1 "Civil Service Systems," et seq.
The Constitution provides that no person who has gained permanent status in the classified civil service shall be subjected to disciplinary action except for cause expressed in writing. La. Const. of 1974, Art. X, § 8(A). The same section gives a classified employee subjected to such disciplinary action the right to appeal to the appropriate Commission and places the burden of proof on the appointing authority. Each city Commission "shall have the exclusive power and authority to hear and decide all removal and disciplinary cases..." subject to review of any question of law or fact upon appeal to the appropriate court of appeal upon application filed with the commission within thirty calendar days after its decision becomes final. La. Const. Art. X, § 12(B).
The issue in the case at bar is whether the Commission exceeded its authority to "hear and decide" when it reduced from five to three days the discipline imposed by the NOPD. NOPD contends that the Commission may modify, reverse or affirm a penalty only as this may be necessary to effectuate the purposes of the civil service *811 merit system. Any other interference infringes, it argues, upon the constitutional powers granted to the executive branch of government to supervise and manage the departments entrusted to them and to exercise discretion in employee discipline.
In support of its contention, NOPD cites Branighan v. Department of Police, 362 So.2d 1221 (La.App. 4 Cir.), writ denied 365 So.2d 247 (La.1978). In this case, we reviewed the Commission's action setting aside the dismissal of a police officer who beat two fellow officers senseless. The Commission concluded that the Superintendent based his decision on a suspicion that the officer was guilty of other instances of physical abuse, the fact that the officer was an above average policeman and that witnesses felt that there existed departmental unevenness in disciplining fighting among officers. We noted that the Commission's opinion, itself, acknowledged that the officer's conduct was sufficient legal cause for dismissal. We held that the legal basis for any change in a disciplinary action can only be that the appointing authority did not show sufficient cause for the action. Since cause justifying a one-day suspension might not justify a dismissal, the Commission's authority to hear and decide includes the authority to modify (reduce) as well as to reverse or affirm a penalty. Branighan v. Department of Police, 362 So.2d at 1222.
"Cause" for dismissal of a classified civil servant who has gained permanent status, such as Officer Smith, has been interpreted to include conduct prejudicial to the public service in which the employee in question is engaged or detrimental to its efficient operation. The Commission has a duty to decide independently from the facts presented whether the NOPD in this case had good or lawful cause for taking disciplinary action and, if so, whether the imposition of a five day suspension was commensurate with the dereliction of duty. Walters, 454 So.2d at 113.
NOPD relies on the following language in the Branighan opinion:
But, for example, cause justifying a 25-day suspension very probably would also justify a 30-day suspension, and the Commission's authority "to hear and decide" an appeal from a 30-day suspension would therefore very probably not include authority to reduce the 30-day suspension to 25 days. The Commission does not have the authority to reduce a penalty except upon a determination that there is insufficient cause for the greater penalty.
This Court also noted:
The superintendent of police is charged with the operation of his department, and the Civil Service Commission is not his supervisor. The superintendent is the one who must run his department and exercise discretion in relation to disciplining his officers, and the Commission is not charged with exercising that discretion. The superintendent may not violate any rights of his officers, and he may not discipline without cause.
Branighan, 362 So.2d at 1223.
NOPD notes several other cases decided by this Court that are consistent with the Branighan decision. We rejected the Commission's reduction of a suspension from thirty days to ten days in Chapman v. Department of Police, 97-1384 (La.App. 4 Cir. 1/28/98), 706 So.2d 656, writ denied 98-0828 (La.5/8/98), 719 So.2d 55, holding that the Commission is not charged with the operation of the NOPD or disciplining its employees. We concluded that the Commission's action was simply a substitution of its judgment for the Superintendent's judgment. There was no finding that the Superintendent lacked sufficient *812 cause to impose the penalty or that NOPD failed to carry its burden of proof. It was an arbitrary and capricious interference with the Superintendent's authority to manage his department.
Similarly, in Palmer v. Department of Police, 97-1593 (La.App. 4 Cir. 1/28/98), 706 So.2d 658, we reversed the Commission's reversal of the NOPD's imposition of a two day suspension. In that case, the Commission substituted its judgment as to the appropriate sanction without an articulated basis for this action. We held the Commission acted arbitrarily and capriciously. Legal cause for disciplinary action was found to exist where the officer's actions clearly impaired the efficient operation of the public service[1]
Of particular relevance is Macelli v. Department of Police, 98-0253 (La.App. 4 Cir. 9/9/98), 718 So.2d 1021. In that case, an officer investigated a theft at a local hotel. He offered to make a police report, but the alleged victim was arrested for public drunkenness and trespass. The officer filed a report concerning the arrest, but not for the alleged theft. He viewed a surveillance tape, concluded it had no evidentiary value and decided not to confiscate the tape. The Superintendent imposed a ten day suspension for failure to write a report and a thirty day suspension for failure to confiscate the tape. The officer appealed to the Commission, which reversed the thirty day suspension and reduced the ten day suspension to a reprimand. This Court held that the NOPD met its burden of proving it had sufficient cause for disciplinary action. At the time he failed to write the theft report, the officer did not know that days later the alleged victim would find the "stolen" money and drop the charges. Furthermore, there was testimony that an officer does not have the responsibility of determining the evidentiary value of a surveillance tape of a crime scene, and has a duty to confiscate such tapes. We found the Commission acted arbitrarily and capriciously, substituting its judgment for that of the appointing authority. We found that the record supports a finding that the penalty imposed was commensurate with the infraction and on the officer's previous work history. Furthermore, the decision of the Commission clearly interfered with the authority of the Superintendent to manage the NOPD.
To the same effect is this Court's holding in Dean v. Department of Police, 99-2454 (La.App. 4 Cir. 3/1/00), 756 So.2d 1150, writ denied XXXX-XXXX (La.5/26/00), 762 So.2d 1107. Officer Dean was disciplined for having left his assigned district while on duty. We found imposition of a thirty day suspension and demotion from Sergeant to Police Officer IV to be reasonable and reversed the Commission's reversal of the punishment imposed by the Superintendent.
The Commissioner's judgment found sufficient legal cause for imposition of discipline for Officer Smith's failure to confiscate the videotape, but found no legal cause in his failure to make a report. In support of the latter conclusion, the Commission wrote:
According to Sgt. Richard Taggert... and Captain L.H. Swain ..., the Appellant should have instead documented the incident to protect himself. They testified that the Appellant could have prepared a miscellaneous report that indicated that the complainant did not want an incident report. However, *813 the disciplinary letter charges the Appellant with failure to prepare an incident report not with failure to file a miscellaneous report.
However, there is no testimony that the "miscellaneous report" is anything other than the standard incident report. In context, it is clear that the witnesses were referring to Officer Smith's option to prepare his incident report as a report of "miscellaneous" incident rather than of a "shoplifting" incident.
Based on the evidence of record, the constitutional principles and consistent jurisprudence thereunder, we find that the Commission acted arbitrarily in reducing the discipline imposed by the NOPD. There is ample evidence to show that the Superintendent acted reasonably and with sufficient legal cause in imposing a five day suspension under the totality of circumstances in this case.

CONCLUSION AND DECREE
For the foregoing reasons, the ruling of the Civil Service Commission in this matter is reversed and the original discipline imposed by the appointing authority is reinstated.
RULING REVERSED. ORIGINAL DISCIPLINE REINSTATED.
NOTES
[1] A prisoner in the officer's custody escaped because the officer did not follow police procedure.