885 So.2d 1266 (2004)
Bernard BUTLER
v.
NEW ORLEANS POLICE DEPARTMENT.
No. 2003-CA-2180.
Court of Appeal of Louisiana, Fourth Circuit.
October 6, 2004.
Gary M. Pendergast, New Orleans, Counsel for Plaintiff/Appellant.
Sherry S. Landry, City Attorney, Joseph V. Dirosa, Jr., Deputy City Attorney, New Orleans, Counsel for Defendant/Appellee.
Court Composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY, and Judge MAX N. TOBIAS, Jr.
TOBIAS, J.
This appeal arises from a decision of the Civil Service Commission for the City of New Orleans (hereinafter "Commission") to reverse the appointing authority's termination of a New Orleans police officer, *1267 Bernard Butler (hereinafter "Butler"), substituting instead a six-month suspension without pay for his admitted misconduct.
The facts of this case are not in dispute. On 6 January 2003, Butler entered a convenience store in New Orleans in plain clothes, as he was off duty at the time. He was wearing sweat pants and had his service revolver tucked in the waistband. When he approached the counter to make a purchase, the revolver slipped from his waistband and he reached to grab it with his right hand. After grabbing the gun, Butler, holding the gun at or below the level of the counter, pointed the gun in the direction of the cashier, Ms. Thu Thi Tu, and said "give me all your money." He then laughed, put the weapon away, and told Ms. Tu that he was "just playing" or something to that effect. The entire incident was recorded on the security cameras located in the store. The next day, Ms. Tu, who was also the owner of the store, filed a complaint with the police department.
Following the incident, Butler was terminated for cause from the police department by correspondence dated 26 March 2003.[1] Butler appealed his termination to the Commission and the matter was set for hearing. The Commission held hearings on 5 June 2003 and 15 June 2003. The testimony presented at the Commission hearing revealed that at the time of the incident, Butler was an eighteen-year veteran of the New Orleans Police Department and was considered "one of the more aggressive and better officers" by his commanding officer, Deputy Superintendent Warren Riley, Chief Operations Officer. Deputy Superintendent Riley also testified that Ms. Tu knew Butler and likely did not believe that she was really being robbed, insofar as Butler was a regular customer at her store. However, the mere fact that such a "bad joke" was made by a police officer brandishing a weapon, and that Ms. Tu was upset enough by the incident to report it to the department, led Deputy Superintendent Riley to the conclusion that Butler should be terminated. He admitted that this incident was the only reason for the termination.
Sergeant Tyronne Smith, the investigating officer, also testified at the hearing. Sergeant Smith was assigned to the Public Integrity Bureau within the police department. Sergeant Smith testified that his report noted three infractions of the internal rules of the police department committed by Butler. The three violations charged to Butler were unauthorized force for exhibiting his weapon, unprofessionalism, and failure to carry his weapon in a holster. In the course of his investigation, Sergeant Smith interviewed Ms. Tu. Ms. Tu's statement reflects that she felt threatened by Butler and that she thought that he had been drinking prior to the incident. Sergeant Smith prepared a report for Deputy Superintendent Riley. Sergeant Smith testified that he made no recommendations regarding disciplinary action, as his only function was to investigate complaints and prepare reports on the evidence.
Butler was the final witness to testify at the Commission hearing. Butler testified that he was giving a ride to a friend when he decided to stop at Ms. Tu's store to *1268 purchase gumbo. He testified that his service revolver was in his vehicle, and that he did not feel comfortable leaving the gun in his car with his friend, so he slipped it into the waistband of his sweat pants. He reportedly felt the gun slipping, so he grabbed it to place it in his pocket, so that he wouldn't drop it. It was during the course of this movement that he uttered the statement "give me all your money." He testified that he grew up in the neighborhood of the convenience store and that Ms. Tu knew him and knew that he was a police officer. Butler and Ms. Tu reportedly went on to have a conversation about complaints Ms. Tu had about the local police district. He testified that Ms. Tu told him that she was out of gumbo, but invited him to return the next day if he still wanted to purchase some. After the exchange, Butler left the convenience store.
The Commission rendered a decision on 13 November 2003 reversing the department's termination of Butler, reducing the penalty to a six-month suspension without pay. In its ruling, the Commission noted that the department had trouble retaining experienced officers, and that the best interests of the department would not be served by the termination of an officer with an otherwise commendable record. Further, the Commission found that the penalty was not commensurate with the offense.
Both the police department and Butler appeal the ruling. Butler maintains that the Commission does not have the authority to suspend an officer for a period more than 120 days, and that the penalty levied against him should be reduced to reflect the maximum suspension time. The police department, however, argues that the Commission abused its discretion and acted arbitrarily and capriciously in reversing the termination of Butler as imposed by the Superintendent of Police, given that there was a clear factual basis for the termination.
First we address whether the Commission acted within its discretion when it reversed the termination of Butler given the uncontested factual allegations.[2] The standard of review for an appellate court with respect to a Commission decision is "multifaceted." Cha-Jua v. Department of Fire, 577 So.2d 332, 335 (La.App. 4 Cir.1991). An appellate court must utilize a "manifestly erroneous" or "clearly wrong" standard when reviewing the factual findings of the Commission; however, when an appellate court examines the discretion exercised by the Commission in determining whether a disciplinary action is legally justified or commensurate with the complained-of offense, the reviewing court should not disturb the finding of the Commission unless it is "arbitrary, capricious or characterized by abuse of discretion." Id., citing, Walters v. Dept. of Police, 454 So.2d 106, 114 (La.1984). Because there is no factual dispute in this case, our inquiry is confined to whether the Commission abused its discretion in setting aside the penalty instituted by the police department, substituting its own, less severe punishment.
La. R.S. 33:2423A provides:
When any employee in the classified service is unable or unwilling to perform the duties of his position in a satisfactory *1269 manner or has committed any act to the prejudice of the service, or has omitted to perform any act that it was his duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service....
After disciplinary action is taken and an officer appeals his case to the Commission, an appointing authority has the burden of establishing by a preponderance of the evidence that the offense complained of "did in fact impair the efficiency and orderly operation of the public service." Burckel v. Department of Fire, 97-0635, p. 6 (La.App. 4 Cir. 9/17/97), 700 So.2d 553, 556; see also, Saacks v. City of New Orleans, 95-2074, p. 12 (La.App. 4 Cir. 11/27/96), 687 So.2d 432, 440. The appointing authority must further establish that there is a "real and substantial relationship between the improper conduct and the efficient operation of the public service." Dean v. Department of Police, 99-2454, p. 2 (La.App. 4 Cir. 3/01/00), 756 So.2d 1150, 1152-53, citing, Macelli v. New Orleans Police Dept., 98-1441, p. 5 (La.App. 4 Cir. 10/21/98), 720 So.2d 754, 756. (Internal cites omitted.)
Chief Warren Riley testified that he interviewed Butler and viewed the surveillance tape before deciding to terminate Butler. He testified that he believed that Butler was joking with Ms. Tu and that he was remorseful for his actions, but that he did not believe that Butler's actions were excusable, especially in light of the fact that cashiers at convenience stores have a very real and valid fear of armed robbery. He also noted that although Ms. Tu understood it was a joke, she was upset and angry enough to copy the surveillance tape and file a formal complaint. Deputy Superintendent Riley went on to testify that he had worked with Butler for a number of years and that he did not come to his decision lightly, as he believed Butler to be a good police officer. However, he noted that Butler's "level of unprofessionalism was just inexcusable."
We agree. Although we recognize that the actions of Butler seemed to lack actual malice or ill intent, we find that the brandishing of a firearm while joking about robbing a cashier with a real fear of armed robbery is sufficient legal cause for severe disciplinary action. In Stevens v. Department of Police, XXXX-XXXX, p. 8 (La.App. 4 Cir. 5/9/01), 789 So.2d 622, 627, this court held:
The public puts its trust in the police department as a guardian of its safety, and it is essential that the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust, citing, Newman v. Department of Fire, 425 So.2d 753 (La.1983).... Indeed the [Civil Service] Commission should give heightened regard to the appointing authorities that serve as special guardians of the public's safety and operate as quasi-military institutions where strict discipline is imperative.
The brandishing of a firearm in a joking and unprofessional manner in the presence of a civilian whom an officer is sworn to protect necessarily threatens the trust the public has in the police department. Further, the failure of Butler to even have his firearm in a holster, instead carrying a weapon in the waistband of his sweat pants, presents a real public safety issue. Butler's blatant disregard for such a simple safety requirement is troubling and certainly grounds for severe discipline by the department.
Finally, we address whether the Commission's substitution of a six-month suspension for a dismissal from the department *1270 was arbitrary and capricious. This court has held that:
[i]t is not the job of the Commission to decide who should be disciplined how. The appointing authority is charged with the operation of the department. He is the one who must run the department, an obviously necessary part of which is dismissing or disciplining employees. While he may not do so without cause, he may, and indeed must, within the exercise of sound discretion, dismiss or discipline an employee for sufficient cause. The Commission is not charged with such operation or disciplining.
Stevens v. Department of Police, XXXX-XXXX, pp. 6-7 (La.App. 4 Cir. 5/09/01), 789 So.2d 622, 626, quoting, James v. Sewerage and Water Board of New Orleans, 505 So.2d 119, 121 (La.App. 4 Cir.1987). Given the serious nature of the complaint against Butler, we find that the Commission abused its discretion in reversing the termination of Butler. The Commission's apparent justification of its decision, that New Orleans can ill afford to lose good police officers, is not sufficient to abrogate the right of the appointing authority to discipline its officers for infractions, especially those that pose a threat to public safety.
Because we find that the Commission abused its discretion in reversing the termination of Butler by the appointing authority, we do not address Butler's assignment of error regarding the validity of a six-month suspension. For the foregoing reasons, the judgment of the Commission is reversed and the termination of Butler by the appointing authority is hereby reinstated.
REVERSED AND RENDERED.
ARMSTRONG, C.J., Concurs in the Result.
ARMSTRONG, C.J. Concurs in the Result.
I respectfully concur in the result. The controlling principle in this case was expressed by this Court in Smith v. New Orleans Police Dept., 00-1486, p. 13 (La.App. 4 Cir. 4/11/01), 784 So.2d 806, 812, wherein we held that where there was "ample evidence to show that the [appointing authority] acted reasonably and with sufficient legal cause," but the Civil Service Commission nonetheless overrules or modifies the action of the appointing authority, then the action of the Civil Service Commission must be characterized as "arbitrary" and reversed.
NOTES
[1] La. R.S. 33:2423 B requires the appointing authority to notify an employee in the classified service of his/her removal, reduction in pay, or demotion in writing, including the reasons for the disciplinary action. Butler is an employee in the classified service as delineated by La. R.S. 33:2401, which defines unclassified service using an exclusive list of positions in city service, of which member of the police department is not included. Section (B) of the same statute provides that "the classified service shall comprise all other positions now existing or hereafter created in the city service." La. R.S. 33:2401.
[2] The jurisdiction of the Commission over such matters and this court over the appeal are not in dispute. Article X, Section 12 of the Louisiana Constitution provides, in part, that "[e]ach city Commission established by Part I of this Article shall have the exclusive power and authority to hear and decide all removal and disciplinary cases...." La. Const. Art. X § 12(B). Decisions of the Commission are reviewable by the court of appeal whose jurisdiction encompasses the locality of the Commission.