787 So.2d 1061 (2001)
Donald BROOKS
v.
DEPARTMENT OF POLICE.
No. 2000-CA-1483.
Court of Appeal of Louisiana, Fourth Circuit.
May 9, 2001.
*1062 Louis A. Gerdes, Jr., New Orleans, Counsel for Plaintiff/Appellee.
Mavis S. Early, City Attorney, Franz L. Zibilich, Chief Deputy City Attorney, Joseph V. Dirosa, Jr., Deputy City Attorney, New Orleans, Counsel for Defendant/Appellant.
Court composed of Judge STEVEN R. PLOTKIN, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, Jr.
TOBIAS, Judge.
This is an appeal by the New Orleans Police Department (NOPD) from a decision of the Civil Service Commission of the City of New Orleans (the Commission) reversing both a ten day suspension and five day suspension imposed on Officer Donald Brooks by New Orleans Police Superintendent Richard J. Pennington, the appointing authority. Officer Brooks, classified as a Police Officer IV, received the ten day suspension for neglect of duty and the five day suspension for violating departmental rules regarding truthfulness and testifying on behalf of a defendant in a criminal proceeding.
On 25 January 1998 at 3:50 a.m., Officer Brooks, while on injured on duty status due to a ruptured disc, was a patron at the "The Showcase" barroom located at 1915 North Broad Street. Two female patrons, whom Officer Brooks knew, began to argue. The argument escalated into a physical confrontation, wherein one of the females sustained injuries to her head. Within minutes of the incident, most of the patrons departed the barroom. Officer Brooks remained on the premises approximately ten more minutes until the owner closed the establishment. The NOPD was called but arrived on the scene after Officer Brooks departed. Several weeks later, following an investigation, the NOPD arrested and charged one of the females with aggravated battery.
*1063 Officer Brooks never reported the incident to the NOPD, made no attempt to contact the investigating officers to report what he had observed, and failed to inform his NOPD supervisor that he was on the premises at the time of the incident.
On 24 June 1998, Officer Brooks gave the female, who had been charged with aggravated battery for the 25 January 1998 confrontation, a ride to Orleans Parish Criminal District Court for a pre-trial hearing in the case. At the time, he was off duty and clad in blue jeans, a T-shirt, and sandals. Officer Brooks was waiting for the defendant in a hallway outside the courtroom when Wayne Fontenelle, the female defendant's attorney from the Orleans Indigent Defender Program, called him into the courtroom to testify. When he went into the courtroom, Judge Arthur Hunter motioned Officer Brooks to take the witness stand. Without giving prior notice to his superiors, Officer Brooks testified for the defense at the pre-trial motion hearing.
Sergeant Paul Long of the NOPD Seventh District conducted two separate administrative investigations and determined that Officer Brooks's actions on 25 January 1998 and 24 June 1998 warranted disciplinary action. As a result of the investigations' findings, Officer Brooks appeared before Assistant Superintendent and Chief of Operations Ronald Serpas (Chief Serpas) at a hearing on 9 March 1999 and explained his actions.
On 31 March 1999, Superintendent Pennington issued two separate disciplinary letters to Officer Brooks. The first letter imposed a ten day suspension and noted the following factual finding:
[O]n January 25, 1998, while at 1915 North Broad Street, you were in a barroom at this location and witnessed an altercation between two (2) females known to you. As a commissioned police officer, you failed to take action which may have possibly prevented one of the females from being struck in the face with a bar glass and injured. You also failed to identify yourself to the responding officers and neglected to inform them [that] you witnessed the incident.
The second letter imposed a five day suspension and noted:
[O]n June 24, 1998, while at Criminal District Court, Section "K," you were called to testify on behalf of a defendant in a criminal trial. You failed to notify the Superintendent via the chain of command prior to testifying, nor did you inform the prosecuting attorney prior to trial that you would be testifying for the defense. You were untruthful in your statement, when you stated [that] you informed the trial judge you could not testify for a defendant without prior notification to the Superintendent, but was ordered by Judge Hunter to testify anyway. Trial transcripts reflected you made no such statement to the judge and Judge Hunter denied ordering you to testify on that date.
Both disciplinary letters referred to the 9 March 1999 hearing before Chief Serpas and concluded that at that hearing Officer Brooks "offered nothing which would tend to mitigate, justify or explain [Officer Brooks's] behavior." The Superintendent concluded, after what the letters describe as his "thorough and complete review of the entire investigative report," that Officer Brooks's conduct constituted a neglect of duty as defined in NOPD Rule 4, and violations of truthfulness pursuant to NOPD Rule 2 relative to moral conduct and testifying on behalf of defendants pursuant to NOPD Rule 5 relative to restricted activities. Moreover, the Superintendent noted that his conduct was contrary to the standards prescribed by Rule IX, *1064 Section 1, paragraph 1.1 of the Rules of the Civil Service Commission.
Officer Brooks appealed his suspensions to the CSC and appeared before the Civil Service Hearing Examiner on 27 July 1999. Officer Brooks testified that on 25 January 1998 he was on injured on duty status with the NOPD with a ruptured disc. Early that morning he was a patron at "The Showcase" on Broad Street when he overheard two females, both of whom he knew, arguing. Officer Brooks testified that he did not intervene in the argument because he did not want to risk aggravating his injured disc. The argument escalated to physical confrontation, which Officer Brooks claimed he did not witness. He acknowledged, however, that one of the females had blood on her face following the fight. Officer Brooks testified that he knew someone had called the NOPD but he departed the scene before the investigating officers arrived. According to Officer Brooks, he did not wait for the police to arrive and never reported the incident because he did not witness the fight. He explained that the two females knew one another and there were several persons in the establishment who had witnessed the fight that could have assisted the investigating officers. Officer Brooks also testified that someone had called the emergency medical technicians, who arrived at the scene before the police and were treating the injured female when he departed.
As to the 24 June 1998 court appearance, Officer Brooks testified that the female defendant asked him to give her a ride to Criminal District Court and he obliged because he had to go to New Orleans Traffic Court on an unrelated matter. After concluding his business in traffic court, Officer Brooks went to Criminal District Court and waited for the female defendant in the hallway outside the courtroom. He explained that Mr. Fontenelle called him to testify for the defendant even though he had not been subpoenaed. Officer Brooks testified that he went into the courtroom and was explaining to the prosecutor and Mr. Fontenelle that NOPD regulations prohibited him from testifying for a defendant without first notifying the Superintendent when Judge Hunter motioned him to take the witness stand. On cross-examination, he acknowledged that Judge Hunter never "ordered" him to testify; however, he believed that he had no choice but to testify. Officer Brooks also testified that he personally knew Judge Hunter, who was a former NOPD officer.
Mr. Fontenelle, a witness for Officer Brooks at the Commission hearing, testified that he called Officer Brooks to testify as a witness at the 24 June 1998 pre-trial hearing after learning from the female defendant that a police officer, who had been in the barroom at the time of the altercation, was waiting in the hallway outside the courtroom. Mr. Fontenelle testified that Officer Brooks had not been subpoenaed and was reluctant to testify because he said he had not witnessed the fight. He corroborated Officer Brooks's testimony that Judge Hunter motioned Officer Brooks to take the witness stand and, from his experience in Judge Hunter's courtroom, that meant the officer had to testify. On cross-examination, however, Mr. Fontenelle never recalled Officer Brooks telling him, the prosecutor, or the judge that NOPD rules prohibited a police officer from testifying for a defendant without first notifying the Superintendent.
Judge Arthur Hunter, also testifying for Officer Brooks at the Commission hearing, testified that he knew Officer Brooks from his former employment as a NOPD police officer and was aware of the NOPD regulation that a prohibited police officer from testifying for a defendant in court without first notifying the Superintendent. *1065 Judge Hunter testified that, regardless of the NOPD regulation, he would have ordered Officer Brooks to testify for the defendant had he refused to do so. According to him, Officer Brooks, though reluctant, voluntarily testified for the female defendant.
Chief Serpas testified at the Commission hearing regarding his disciplinary recommendations. He testified that he recommended a ten day suspension for neglect of duty for Officer Brooks's failure to take appropriate action after the barroom incident. Chief Serpas maintained that Officer Brooks had a duty to report what he knew about the incident to the investigating officers. He explained that the neglect of duty penalty arose not only from Officer Brooks's failure to report the incident at the time it occurred but also from his failure to report it at all. According to him, Officer Brooks had critical information that could have altered the case; however, on cross-examination he was unable to identify this information. Nonetheless, Chief Serpas maintained that Officer Brooks's failure to report the accident impaired the efficient operation of the police department because it delayed the investigation; three weeks elapsed from the time the incident occurred until the police made an arrest. Officer Brooks knew the identity of the two females involved in the altercation and had a duty to report this information to the arresting officers, Chief Serpas testified.
As to Officer Brooks's five day suspension, Chief Serpas recommended the penalty because Officer Brooks was untruthful during the internal investigation when he told the investigator that Judge Hunter ordered him to testify at the 24 June 1998 pre-trial hearing. Chief Serpas maintained that Officer Brooks violated NOPD regulations when he testified at the pretrial hearing for the female defendant without first notifying the Superintendent. He further explained that if, in fact, the judge had ordered Officer Brooks to testify for the defendant, the officer should have informed the Superintendent that he had done so.
Based on the Civil Service Hearing Examiner's report, the Commission concluded that the appointing authority failed to establish that Officer Brooks neglected his duty because Officer Brooks had not witnessed the physical confrontation that resulted in the criminal charge. The Commission found that the appointing authority had access to Officer Brooks's compelled testimony and if the officer had material information that he had not disclosed, then the appointing authority should have presented that testimony in the hearing, yet it failed to do so.
The Commission further found that the appointing authority failed to establish by a preponderance of the evidence that Officer Brooks was untruthful. It concluded that Judge Hunter had corroborated Officer Brooks's statement to the investigator that he believed he had no choice but to testify.
Lastly, the Commission found that the appointing authority failed to establish that the disciplinary action imposed for Officer Brooks's failure to obtain permission before testifying as a defense witness was justified. It concluded that the appointing authority failed to consider that Officer Brooks had no advance warning that he would be called as a witness or that he was not subpoenaed to testify at the pre-trial hearing. The Commission determined that Judge Hunter would have directed Officer Brooks to testify regardless of the NOPD internal rules.
On appeal, the NOPD argues that the Commission acted arbitrarily and capriciously and committed clear error in reversing the ten day and five day suspensions *1066 imposed by the Superintendent and exceeded its constitutional authority by substituting its judgment for that of the appointing authority.
In Smith v. New Orleans Police Department, 99-0024, pp. 5-6 (La.App. 4 Cir. 9/22/99), 743 So.2d 834, 837-838, writ denied, 99-3242 (La.1/14/00), 753 So.2d 221, this Court set forth the standard of appellate review regarding civil service disciplinary cases as follows:
In civil service disciplinary cases, an appellate court is presented with a multifaceted review function. Walters v. Department of Police of the City of New Orleans, 454 So.2d 106 (La.1984). First, as in other civil matters, deference will be given to the factual conclusions of the Commission. Hence, in deciding whether to affirm the Commission's factual findings, a reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review. Walters, supra.

* * * * * *
Second, in evaluating the Commission's determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the court should not modify the Commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. La. R.S. 49:964.
Legal cause exists whenever an employee's conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino v. Department of Police, 558 So.2d 1311 (La.App. 4th Cir. 1990). The Appointing Authority has the burden of proving the impairment. La. Const. Art. X, Sec. 8(A). The appointing authority must prove its case by a preponderance of the evidence. Cittadino, supra.

"Arbitrary or capricious" can be defined as the lack of a rational basis for the action taken. Shields v. City of Shreveport, 579 So.2d 961 (La.1991). A reviewing court should affirm the Civil Service Commission conclusion as to existence or cause for dismissal of a permanent status public employee when the decision is not arbitrary, capricious, or an abuse of the Commission's discretion, as presented in this case.
Employees with the permanent status in the classified civil service may be disciplined only for cause expressed in writing. La. Const., Art. X, Sec. 8(A). Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the "efficient operation" of the public service. Newman v. Department of Fire, 425 So.2d 753 (La. 1983).
In reviewing the Commission's findings of fact, the Court's appropriate standard of review suggests that this Court should not reverse or modify such a finding unless it is clearly wrong or manifestly erroneous. If the Commission's order is not arbitrary, capricious or characterized by abuse of discretion, this Court should not modify the Commission's decision. Cittadino, supra.

The Commission has the authority to "hear and decide" disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const. art. X, § 12; Branighan v. Department of Police, 362 So.2d 1221, 1223 (La.App. 4 Cir.1978). However, the authority to reduce a penalty can only be exercised if there is insufficient cause for imposing the greater penalty. Id. at 1222. Thus, in the instant case, unless the Commission determined that there was insufficient cause for the appointing authority *1067 to impose the ten day and five day suspensions, the penalties must stand.
The appointing authority is charged with the operation of his or her department and it is within his or her discretion to discipline an employee for sufficient cause. Joseph v. Department of Health, 389 So.2d 739, 741 (La.App. 4 Cir. 1980); Branighan, supra. The Commission is not charged with such operation or such disciplining. Id. In James v. Sewerage and Water Board of New Orleans, 505 So.2d 119 (La.App. 4 Cir.1987), we considered a decision of the Commission which reversed a five day suspension of an employee and suggested a reprimand instead. In reversing the Commission and reinstating the suspension, we reaffirmed and reiterated the holdings in Joseph and Branighan, stating:
It is not the job of the Commission to decide who should be disciplined how. The appointing authority is charged with the operation of his department. He is the one who must run the department, an obviously necessary part of which is dismissing or disciplining employees. While he may not do so without cause, he may, and indeed must, within the exercise of sound discretion, dismiss or discipline an employee for sufficient cause. The Commission is not charged with such operation or such disciplining.
Id. at 121
In Chapman v. Department of Police, 97-1384 (La.App. 4 Cir. 1/28/98), 706 So.2d 656, we rejected the Commission's reduction of a suspension from thirty days to ten days, holding that the Commission is not charged with the operation of the NOPD or disciplining its employees. We concluded that the Commission's action was simply a substitution of its judgment for the Superintendent's judgment. We found that the Superintendent had sufficient cause to impose the penalty and that the NOPD carried its burden of proof. The Commission's action was an arbitrary and capricious interference with the authority of the Superintendent to manage his department.
Similarly, in Palmer v. Department of Police, 97-1593 (La.App. 4 Cir. 1/28/98), 706 So.2d 658, we reversed the Commission's reversal of the NOPD's imposition of a two day suspension. In that case, the Commission substituted its judgment as to the appropriate sanction without an articulated basis for its action. We held the Commission acted arbitrarily and capriciously. We found legal cause for disciplinary action existed where the officer's actions clearly impaired the efficient operation of the public service.[1]
Recently, in Smith v. New Orleans Police Department, 00-1486 (La.App. 4 Cir. 4/11/01),784 So.2d 806, we reversed the Commission's reduction of a suspension from five days to two days for an officer's failure to complete an investigation of a shoplifting incident by writing a police report and confiscating surveillance tapes that showed the alleged perpetrator fleeing the scene. We found there was ample evidence to show that the Superintendent acted reasonably and with sufficient legal cause in imposing a five day suspension under the circumstances of the case.
After reviewing the evidence in this case, we find that the Commission arbitrarily reversed the discipline imposed by the Superintendent. Officer Brooks's failure to report the 25 January 1998 barroom fight clearly impaired the efficient *1068 operation of the public service. Even though Officer Brooks did not witness the actual physical confrontation between the two female bar patrons, we agree with the appointing authority that his failure to remain on the scene and report his knowledge of the incident to the investigating police officers contributed to the delay in the identification and arrest of the alleged perpetrator. Furthermore, Officer Brooks admitted that the confrontation resulted in an injury to one of the females and, therefore, he had a duty to report the incident to the NOPD. The fact that he failed to report the barroom incident at all supports the appointing authority's imposition of disciplinary action for neglect of duty.
As to the untruthfulness charge, the evidence clearly supports the appointing authority's claim that Officer Brooks told the internal investigator that he had informed Judge Hunter that he could not testify for a defendant without prior notification to the Superintendent but Judge Hunter ordered him to testify anyway. NOPD Rule 2, relative to Moral Conduct and Truthfulness, provides that:
Upon the order of the Superintendent of Police, the Superintendent's designee, or a superior officer, employees shall truthfully answer all questions specifically directed and narrowly related to the scope of employment and operations of the Department which may be asked of them.
Judge Hunter and Mr. Fontenelle both testified that Officer Brooks was reluctant to testify as a defense witness at the pretrial motion hearing because he claimed he never witnessed the physical confrontation. Nonetheless, Mr. Fontenelle testified that he had no recollection of Officer Brooks telling him, the trial judge, or the prosecutor that NOPD rules prohibited him from testifying without first notifying the Superintendent. Likewise, Judge Hunter testified that Officer Brooks never invoked the NOPD rule and voluntarily testified. Judge Hunter stated that he would have ordered Officer Brooks to testify only if he had refused to do so. Under these circumstances, we find the appointing authority had cause to discipline Officer Brooks for being untruthful.
Finally, we find the appointing authority had legal cause to discipline Officer Brooks for his failure to notify the Superintendent prior to testifying for the female defendant. NOPD Rule 5, relative to restricted activities and testifying on behalf of defendants, provides, in part:
Members of the Department, when testifying on behalf of any defendant(s) in any criminal case, civil proceeding, or civil administrative hearing (i.e., including but not limited to: liquor license revocation, driver's license revocation) where the City of New Orleans or the New Orleans Police Department is a prosecutor, plaintiff, or defendant, shall notify the prosecuting or plaintiff's attorney and the Superintendent, through their chain of command, that they will be testifying, before appearing in the defendant's behalf.
It is undisputed that Officer Brooks testified as a witness for the female defendant at the 24 June 1998 pre-trial hearing without first notifying the Superintendent via his chain of command. Officer Brooks's belief that he had no choice but to testify does not excuse his failure to notify the Superintendent of his testimony. His failure to notify the Superintendent after the fact further supports the appointing authority's position that Officer Brooks never intended to comply with NOPD Rule 5.
The public puts its trust in the police department as a guardian of its safety, and it is essential that the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees *1069 sworn to uphold that trust. Newman, supra. Indeed, the Commission should give heightened regard to the appointing authorities that serve as special guardians of the public's safety and operate as quasi-military institutions where strict discipline is imperative.
Here, the Superintendent proved by a preponderance of the evidence that Officer Brooks's dereliction substantially impaired the efficient and orderly operation of the police department. Thus, the Commission's reversal of the ten day and five day suspensions imposed by the Superintendent was arbitrary and capricious.
Accordingly, the judgment of the Civil Service Commission is reversed and the ten day and five day suspensions imposed upon Officer Donald Brooks by the appointing authority are reinstated.
REVERSED AND RENDERED.
NOTES
[1] A prisoner in the officer's custody escaped because the officer did not follow police procedure.