JOAN BERNARD ARMSTRONG, Chief Judge.
 

 liMax C. Johnson, a permanent classified employee of the City of New Orleans, through the New Orleans Police Department (NOPD), appeals the ruling of the City Civil Service Commission for the City of New Orleans (the Commission) affirming his suspension and termination from his position as a Police Officer I. On March 26, 2007, NOPD Superintendent Warren J. Riley addressed a letter to Officer Johnson advising him of an administrative investigative report alleging violations of NOPD Rules and/or Procedures, specifically violation of La. R.S. 14:35 relative to Simple Battery, and Neglect of Duty. According to Superintendent Riley’s letter, NOPD Sergeant Daniel Wharton of the Public Integrity Bureau (PIB) conducted the investigation, and determined that on or about February 12, 2005, Officer Johnson was identified by Tyler Evans as the officer who punched him while he was in the custody of two other NOPD officers. According to the Superintendent’s letter, Officer Johnson gave an administrative statement to Sergeant Wharton in which Officer Johnson admitted that he arrived on the scene of the incident but did not advise the NOPD dispatcher 12of the dispo
 
 *505
 
 sition of the assignment he was working prior to relocating to the scene of the incident. Officer Johnson was given an opportunity to present mitigating facts at a hearing held before Deputy Superintendent Anthony W. Cannatella of the NOPD Operations Bureau on March 21, 2007. According to the Superintendent’s letter, Officer Johnson offered no mitigating or justifying evidence at that hearing. Accordingly, the Superintendent adopted the Deputy Superintendent’s recommended finding of a sustained violation of Adherence to Law, in that Officer Johnson committed the crime of simple battery on Mr. Evans, a violation of La. R.S. 14:35, and was guilty of Neglect of Duty. The Superintendent approved the penalty recommended by the Deputy Superintendent, that is, a five day suspension for the Neglect of Duty finding, and dismissal for the sustained violation of La. R.S. 14:35, the latter effective at 11:00 a.m. on March 26, 2007.
 

 Officer Johnson timely appealed his termination to the Commission, and the Commission’s hearing officer tried the case on August 15, 2007, pursuant to Article X, § 12 of the Louisiana Constitution of 1974. The hearing officer submitted his opinion to the Commission, which rendered and signed a judgment based on that opinion, denying the appeal, on February 21, 2008
 
 [1]
 
 . This appeal followed. For the reasons that follow, we affirm the decision of the Commission.
 

 Sergeant Wharton testified at the hearing that he was assigned to the NOPD’s PIB. He was first advised of a brutality complaint on February 12, 2005 at about two o’clock in the morning. The incident occurred at six o’clock the prior |sday. He interviewed Mr. Evans, a medical student living out of the country but attending school in the area. Sergeant Wharton observed that Mr. Evans appeared to have been drinking overnight and had dried blood on his face. On cross-examination, Sergeant Wharton testified that he interrogated Mr. Evans from eight o’clock on Saturday morning, when they met, until about eight that evening. He knew Mr. Evans was leaving town to travel abroad and tried to learn as much as he could from him prior to his departure. Sergeant Wharton testified on cross-examination that, based on his nineteen years as an NOPD officer, the issue of whether to trust the testimony of an intoxicated person is a judgment call, and about half the time such a person could be trusted. He admitted that some of the things Mr. Evans told him were not consistent with the way the incident happened. Specifically, Mr. Evans told him that he was walking in front of the streetcar to protest the fact that the streetcar driver would not let two young people on the streetcar. Later, Sergeant Wharton learned that the driver would not allow Mr. Evans himself to board the streetcar because his pass had expired.
 

 He learned from his interview that Mr. Evans was attempting to get on a streetcar when the attendant refused to admit him. Two female NOPD officers put him in a police car and drove him to a remote location where they met a male police officer who punched Mr. Evans in the mouth twice and forced him to wipe his blood off the police car with his jacket. The officer released him in an unfamiliar area. He happened upon the Juvenile Bureau and advised the officer at the bureau that he had been beaten by the police. The officer called his command 14desk who advised the PIB of the complaint. Mr. Evans advised Sergeant Wharton of his determination to
 
 *506
 
 pursue the complaint, and gave Sergeant contact information.
 

 Sergeant Wharton obtained the names of the officers from NOPD Lieutenant Stevenson, examined the patrol car and observed blood on the hood. Sergeant Wharton testified that he pulled six photographs of police officers who had similar facial characteristics, all of whom were wearing light blue shirts, including a photograph of Officer Johnson. The NOPD computer then randomly arranged the six photographs in two rows of three photographs each. On cross-examination, Sergeant Wharton admitted that Officer Johnson was the only person whose photograph in the array showed him smiling. Using electronic communication, Sergeant Wharton provided Mr. Evans with the photographic line-up, from which Mr. Evans identified Officer Johnson as the person who had punched him. A copy of the electronic communication was introduced at the hearing in connection with Sergeant Wharton’s testimony.
 

 Sergeant Wharton submitted his report sustaining the allegations, on the basis of Mr. Evans’s identification. The administrative procedure went forward, but was interrupted by Hurricane Katrina.
 

 Sergeant Wharton interviewed Officer Johnson, who claimed that two female NOPD officers telephoned him and asked him to meet them at the corner of Canal and Broad Street. Sergeant Wharton learned that, at the time Officer Johnson received the call, he was working on the recovery of a stolen vehicle. [BWhen Sergeant Wharton checked that item number and disposition, he learned that Officer Johnson had never advised his dispatcher that he had completed the stolen vehicle recovery.
 

 Sergeant Wharton admitted on cross-examination that Officer Shadrel Joseph, one of the female officers, was released from the scene and, through two interviews, did not say that Officer Johnson struck Mr. Evans. Furthermore, Sergeant Wharton did not receive anything from the crime lab identifying the blood on Mr. Evans’s jacket and shirt or on police car as Mr. Evans’s blood; the crime lab report merely indicated that the substance was human blood.
 

 On cross-examination, Sergeant Wharton identified the statement of RTA Street Car Driver, Kevin Johnson, which the driver gave to the sergeant on February 12, 2005. The driver said that Mr. Evans, a Caucasian with sandy blonde hair and beard, wearing a black leather jacket, blue shirt and black jeans, and apparently heavily intoxicated, got on the driver’s streetcar at Carondelet and Canal Streets and presented an invalid one-day pass. The driver told him he could not ride on the invalid pass, and, when advised that Mr. Evans had no money, told him he would have to get off the streetcar. Mr. Evans then walked in front of the street car from Bourbon Street to Tonti Street. The driver repeatedly rang his bell, in an attempt to cause Mr. Evans to remove himself from the streetcar’s path, to no avail. The driver then called the RTA dispatcher, Charles LaFrance. Mr. LaF-rance drove his RTA jeep onto the streetcar track, and Mr. Evans got behind the jeep, doing everything in his power to stay on the tracks. An NOPD car with two female | ^officers pulled up at the intersection of Tonti and Canal Streets. One of the officers told Mr. Evans to stop, but he kept on walking. She told him to get on the police car and, when he refused, she pushed him onto the car and handcuffed him. According to the streetcar driver, the officer did not tackle Mr. Evans, who was struggling with the officers and resisting being placed in the police car, kicking at the officers. The officers did not punch
 
 *507
 
 him, but pushed him into the car and drove down Tonti Street in the direction of Tulane Avenue and Broad Street. The driver specifically contradicted Mr. Evans’s claim that he was walking in front of the streetcar to protest the driver’s refusal to allow a young African-American man to enter the streetcar. The driver denied having observed any blood on Mr. Evans at any time.
 

 Sergeant Wharton testified on cross-examination that both of the female NOPD officers denied having had a struggle with Mr. Evans. This was confirmed by the RTA videotape of the incident that Sergeant Wharton viewed. He also testified that the female officers would not assist in his investigation, leading him to assume that they would not give testimony that would be damaging to a fellow police officer.
 

 At the conclusion of his investigation, Sergeant Wharton submitted the case to the District Attorney to determine whether or not there would be criminal charges. The District Attorney did not respond for a year and a half, whereupon Sergeant Wharton abandoned the criminal aspect of the case because of lack of cooperation from the office of the District Attorney.
 

 |7Wdien questioned by the hearing officer concerning his credibility assessments of Officer Johnson and of Mr. Evans, Sergeant Wharton testified that Mr. Evans had nothing at stake, and was not under arrest, so there was no reason for him to lie. Furthermore, the RTA driver testified that he did not observe any blood on Mr. Evans’s face or clothing at the time he was placed in the police car. Sergeant Wharton testified that he believed Mr. Evans’s claim that Officer Johnson beat him because he had called the two female officers “bitches and whores.”
 

 Officer Johnson testified at the hearing that he was not present when the female officers arrested Mr. Evans, but arrived on the scene later near the intersection Canal and Broad Streets, in response to a cell phone call from the officers. The streetcar was not present at that time. He was present for only a minute or two, and did not speak to Mr. Evans. The officers told him he was not needed, and he left the scene. Officer Johnson admitted that it was possible that Mr. Evans had the opportunity to see his face, because he stopped and saw Mr. Evans outside the police car. He denied that Mr. Evans was bleeding when he saw him, but admitted that he was not so close that he necessarily would have observed bleeding. Officer Johnson denied having lied to Sergeant Wharton or having struck Mr. Evans. He testified that he was never in a position where it would have been appropriate to use force against Mr. Evans, and denied having witnessed anyone use force against him.
 

 Tracey Fulton, an NOPD Police Officer 4, testified at the hearing that she had worked with Officer Johnson and known him for four and a half years. She | Rworked as his partner in the first district, off and on for about a year, and on Bourbon Street Promenade in the eighth district for almost a year and a half. During that time, she never had to punch drunken people in the mouth. She observed Officer Johnson to be a happy-go-lucky person who liked his job. She testified that Officer Johnson “very often” followed NOPD’s rules. She said it was very hard to make him angry, and could not recall any case when “the average drunk” person angered him
 
 [2]
 
 .
 

 After having reported on the foregoing testimony, the hearing officer noted that
 
 *508
 
 this Court has ruled that hearsay is admissible in an administrative hearing, and that a classified employee can lose his job without having had the opportunity to face his accuser and cross-examine the accuser’s testimony when other credible evidence is present. He referred to Sergeant Wharton’s testimony that he observed Mr. Evans’s injuries, and believed his allegation that a police officer had punched him in his mouth. He also noted that Sergeant Wharton concluded from Mr. Evans’s identification of Officer Johnson from a photographic line-up that the officer had caused the injuries that Sergeant Wharton had observed. The NOPD having met its burden of proof, the hearing officer recommended that Officer Johnson’s appeal should be denied.
 

 The Commission accepted the hearing officer’s factual findings and found that the NOPD had sustained its burden of proof. Therefore, it denied Officer Johnson’s appeal.
 

 19An employer cannot subject an employee who has gained permanent status in the classified city civil service to disciplinary action, including termination, except for cause expressed in writing. La. Const., Art. X, § 8(A);
 
 Walters v. Department of Police of City of New Orleans,
 
 454 So.2d 106 (La.1984). Legal cause exists when the employee’s conduct impairs the efficiency of the public service in which he or she is engaged.
 
 Cittadino v. Department of Police,
 
 558 So.2d 1311 (La.App. 4th Cir.1990). The Commission must decide independently from the facts presented whether the appointing authority has good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction.
 
 Walters v. Department of Police of City of New Orleans, supra.
 
 The appointing authority has the burden of proving by a preponderance of the evidence, but not beyond a reasonable doubt, the occurrence of the complained of activity, and that the conduct impaired the efficiency of the public service. It must also prove the actions bear a real and substantial relationship to the efficient operation of the public service.
 
 Cittadino v. Department of Police, supra.
 
 The employee may appeal from such an action to the Commission, where the appointing authority has the burden of proving the factual basis for the disciplinary action.
 
 Goins v. Department of Police,
 
 570 So.2d 93 (La.App. 4th Cir.1990).
 

 In civil service disciplinary cases, an appellate court is presented with a multifaceted review function. Deference will be given to the factual conclusions of the Commission. Thus, in evaluating the Commission’s factual findings, a |inreviewing court should apply the manifest error standard prescribed generally for appellate review.
 
 Taylor v. New Orleans Police Dept.,
 
 00-1992, p. 3 (La.App. 4 Cir. 12/12/01), 804 So.2d 769, 772.
 

 It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Appellate courts must constantly have in mind that their initial review function is not to decide factual issues
 
 de novo.
 
 When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact-
 
 *509
 
 finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one or more witnesses, that finding can virtually | n never be manifestly erroneous or clearly wrong.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844-845 (La.1989).
 

 Furthermore, in evaluating the Commission’s decision as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the court should not modify the Commission’s order unless it is arbitrary, capricious or characterized by abuse of discretion. La. R.S. 49:964;
 
 Taylor v. New Orleans Police Department, supra,
 
 at p. 3, 804 So.2d at 772. Disciplinary action against a civil service employee is arbitrary or capricious where there is no real and substantial relationship between the improper conduct and the efficient operation of the public operation, and can be defined as the lack of rational basis for the action taken.
 
 Id.
 

 Officer Johnson claims that the Commission’s ruling is capricious and unsupported by substantial or competent evidence. He contends that the Commission relied on incompetent hearsay evidence. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. La.Code Evid. Art. 801(C). It is well accepted that hearsay evidence may be admissible in administrative hearings.
 
 Driscoll v. Stucker,
 
 04-0589, p. 24 (La.1/19/05), 893 So.2d 32, 50. Although hearsay may be admissible in administrative hearings, the findings of an administrative body must nonetheless by supported by competent evidence.
 
 Id.
 
 at p. 26, 893 So.2d at 51, citing
 
 Taylor v. New Orleans Police Department, supra.
 
 The question becomes whether hearsay evidence may be considered “competent | ^evidence.” Hearsay evidence, such as an investigating officer’s sworn statement may qualify as competent evidence, provided that the evidence has some degree of reliability and trustworthiness and is of a type on which a reasonable person would rely. Furthermore, the admission of such hearsay evidence in an administration must not infringe upon any constitutional principles.
 
 Taylor v. New Orleans Police Department, supra
 
 at p. 5, 804 So.2d at 773. In the Taylor case, as in the case at bar, the victim did not testify. Three officers testified at the hearing that they had interviewed the victim, and that evidence including marks on her throat was consistent with her claim that she had been choked by the disciplined officer. The Commission in that case rejected the testimony and found that without the victim’s testimony, the NOPD had not met its burden of proof, finding that the disciplined officer was denied his constitutional right to cross-examine the victim about the serious allegations of aggravated battery presented in the case. This Court disagreed, finding that the Commission committed clear error in those findings. This Court held that our jurisprudence permits the admission of hearsay evidence in administrative hearings and, further, that this practice does not violate the constitution, citing
 
 Glazer Steel Corp. v. Administrator, Office of Employment Sec. Of
 
 
 *510
 

 State of La.,
 
 98-0441 (La.App. 4 Cir. 9/30/98), 719 So.2d 674;
 
 Spreadbury v. State, Dept. of Public Safety,
 
 99-0233 (La.App. 1 Cir. 11/5/99), 745 So.2d 1204; and
 
 Brouillette v. State, Dept. of Public Safety, License Control and Driver Imp. Div.,
 
 589 So.2d 529 (La.App. 1 Cir.1991). Particularly, the Court held that the hearsay statements of the officers, who were in similar positions to |1sSergeant Wharton in the instant case, should be considered competent evidence if the information is reliable and trustworthy. In
 
 Gant v. Department of Police,
 
 99-1351 (La.App. 4 Cir. 1/5/00), 750 So.2d 382, the investigating officer’s testimony was found to be competent evidence because it was based upon personal knowledge obtained during an interview of the victim.
 

 In the instant case, as in
 
 Taylor,
 
 the officer was summoned in a timely manner to interview the victim, whose face still bore the dried blood evidence of his injury. The investigating officer had the opportunity to speak with and observe the victim, and his injuries, and these observations corroborated Mr. Evans’s allegations that he had been punched in the face.
 
 See, Taylor v. New Orleans Police Department, supra,
 
 at p. 7, 804 So.2d at 774.
 

 The victim’s allegations are also supported by the streetcar driver’s testimony. This independent witness testified that he saw Evans before, during and after he was arrested by the two female officers, and testified that there was no blood on the victim at those times.
 

 Thus, the victim’s hearsay evidence is supported by Officer Johnson’s admission that he was at the scene of the incident in response to a cell phone call from one of the female officers, the evidence of blood on the victim’s clothing and on the police car, and the photographic lineup identification.
 

 Officer Johnson claims that the Commission relied upon an “incompetent” and unreliable photographic lineup. Counsel argued before the Hearing Officer that the lineup was unconstitutionally suggestive because Officer Johnson’s 114photograph was the only one of the six in which the person photographed was smiling. In criminal cases, reliability, as shown by the totality of the circumstances is the linchpin when deciding admissibility of identification testimony.
 
 Manson v. Brathwaite,
 
 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In order to suppress a pretrial identification in a criminal case, a defendant must first show a suggestive identification procedure and, secondly, demonstrate the likelihood of misidentification by the witness. Thus, even in cases of a suggestive out-of-court procedure, identification testimony will be admitted if found to be reliable under the totality of the circumstances.
 
 State v. Guillot,
 
 353 So.2d 1005 (La.1977). A lineup is unduly suggestive if the procedure focuses attention on the defendant.
 
 State v. Robinson,
 
 386 So.2d 1374 (La.1980). However, in
 
 State v. Tucker,
 
 591 So.2d 1208, 1213 (La.App. 2 Cir.1991), the Court held that the factor that the defendant was the only smiling subject in a photographic lineup did not unduly focus attention on the defendant.
 

 Officer Johnson claims that the NOPD failed to prove its case by a preponderance of the evidence. He also claims that the Commission relied on incompetent evidence that did not overcome his sworn testimony and that of his former partner, Officer Fulton.
 

 The appointing authority in this case, the NOPD, found that Officer Johnson violated department rules requiring employees to adhere to the law, by having violated the statutory prohibition against simple battery. The applicable rule provides that NOPD employees shall act in accordance
 
 *511
 
 with the United States, | ^Louisiana and City of New Orleans Constitutions, statutes, ordinances, administrative regulations and their official interpretations. The victim’s statement, Sergeant Wharton’s observations and credibility call at the interview he conducted of the victim, the testimony of the RTA driver that the victim was not bloodied when he last saw him in the custody of the two female officers, Officer Johnson’s admission that he was present at the scene, and the victim’s photographic identification of his assailant clearly preponderate against Officer Johnson’s self-serving denial of having punched the victim and Officer Fulton’s general character testimony. We cannot say, based upon the record taken in its entirety, that the Commission was manifestly erroneous or clearly wrong in accepting Sergeant Wharton’s testimony and in finding that the NOPD had sustained its burden of proving it was more likely than not that Officer Johnson violated the NOPD rule requiring adherence to law by committing the crime of simple battery on Mr. Evans.
 

 The final determination to be made is whether the Commission was arbitrary and capricious in finding that Officer Johnson’s actions impaired the efficient operation of the NOPD and justified his termination. As this Court held in
 
 Tucker v. New Orleans Police Department, supra
 
 at p. 11, 804 So.2d 769 at 776, citing
 
 Brooks v. Department of Police,
 
 00-1483, p. 7 (La.App. 4 Cir. 5/9/01), 787 So.2d 1061, 1068-69:
 

 The public puts its trust in the police department as a guardian of its safety, and it is essential that the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust. Indeed, the Commission should lifigive heightened regard to the appointing authorities that serve as special guardians of the public’s safety and operate as quasi-military institutions where strict discipline is imperative. The appointing authority has discretion to discipline an employee for cause when an employee’s conduct impairs the efficiency of the public service in which the employee is engaged.
 

 Based on our review of the record in its entirety, we find the Commission’s conclusion that Officer Johnson violated the NOPD’s rule requiring adherence to the law when he committed a simple battery on Mr. Evans to have been reasonable. It is clear that, in light of the special relationship between the members of the NOPD and the public, conduct such as Officer Johnson’s clearly interferes with the efficient operation of the NOPD, violates the trust the public must have in the police force, and justifies his termination. For the foregoing reasons, we affirm the decision of the Commission.
 

 AFFIRMED.
 

 [1]
 

 . Commissioner Dana M. Douglas authored the decision, in which Chairman William R. Forrester, Jr. and Commissioner Terrell Broussard concurred.
 

 [2]
 

 . The phrases in quotation marks are taken from Officer Fulton’s testimony.