485 So.2d 626 (1986)
William G. NEWKIRK
v.
SEWERAGE AND WATER BOARD CITY OF NEW ORLEANS.
No. CA-4279.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1986.
Rehearing Denied April 16, 1986.
Writ Denied June 13, 1986.
*627 Avis Topps, New Orleans Legal Assistance Corp., New Orleans, for appellant.
Gerard M. Victor, Gen. Counsel, John D. Lambert, Jr., Sp. Counsel, Jacob Taranto, III, Asst. Sp. Counsel, Mary-Elizabeth Pattron, Senior Counsel, Leonard Crooks, Associate Counsel, Sewerage and Water Bd. of New Orleans, New Orleans, for appellee.
Before BYRNES, CIACCIO and WILLIAMS, JJ.
CIACCIO, Judge.
William G. Newkirk appeals the decision of the Civil Service Commission which upheld his suspension and dismissal from employment by the New Orleans Sewerage and Water Board. We affirm the plaintiff's suspension and reverse his termination.
The principal issue presented is whether the Civil Service Commission erred in finding the appointing authority had met its burden of proof in this case.
Plaintiff, William G. Newkirk, began his employment with the defendant, New Orleans Sewerage & Water Board, on August 10, 1981. He held the position of Utilities Plant Worker II. As a part of his assigned duties, Newkirk was responsible for visiting various sewerage plants in a given area of the City in order to insure the effective operation of those plants.
Antoinette Jones, the operator of a private school bus service, filed a verbal complaint with the defendant against Newkirk. According to Ms. Jones, at approximately 7-7:15 a.m., on July 6, 1984, she was operating her school bus on Dwyer Road in New Orleans when she came upon Newkirk's truck stopped in a traffic lane of that roadway. Since there was no apparent reason for Newkirk's vehicle to be stopped, Jones blew the horn of her vehicle in an attempt to have Newkirk move his vehicle. According to the complaint filed by Jones, Newkirk made an obscene gesture to her and used vulgar language. She alleged that he thereafter continued to follow her in his vehicle along her school route. Fearing that he would follow her home, Jones drove into the Seventh District Police Station to report this incident. Newkirk stopped following Jones when she departed from her last stop on her school bus route.
As a result of Jones' complaint, Charles Hartman, the plaintiff's supervisor, called Newkirk and his fellow worker, Jerry Celestine, into his office in order to question them about the alleged incident. According to Hartman, the plaintiff admitted that he had cursed Ms. Jones and he admitted being on Grant Street which was a street outside of his normal route area. Hartman thereafter checked the log books of the various stations and observed that the logs indicated that Newkirk passed certain stations without stopping to check them. Due to Newkirk's prior disciplinary actions and the occurrence of this incident, he was given written notice of a one week suspension followed immediately by his termination from employment by his appointing authority.
In order to subject a permanent employee to disciplinary action there must exist legal cause La.Const. Art. 10 Sec. 8. Martin v. City of St. Martinville, 321 So.2d 532 (La.App. 3rd Cir., 1975). Repeated improper conduct after lesser disciplinary action has been taken, the totality of individual lesser offenses or even a single particular aggravated incident have all been found to constitute legal cause for dismissal. See: Ryder v. Dept. of Health & Human Resources, 400 So.2d 1123 (La. App., 1st Cir., 1981). The appointing authority must prove, by a preponderance of the evidence, the occurrence of the complained of activity. See: Dale v. French Market Corp., 452 So.2d 1180 (La.App., 4th Cir.,1984). Additionally, the appointing authority must prove that the conduct complained of impaired the efficiency of the public service and that it bears a real and substantial relationship to the efficient operation of the public service in which the *628 employee was engaged. Ryder v. Department of Health & Human Resources, supra; Reboul v. Dept. of Police, 420 So.2d 491 (La.App., 4th Cir.,1982).
The Commission concluded from the evidence presented that the appointing authority had failed to prove that this employee used vulgar language or that he had made any obscene gestures, as the complainant testified that she could not hear what Newkirk was saying and the only gesture which she observed was Newkirk's indication that she should "come over" to his stopped vehicle. The Commission did, however, find that the complainant had been followed by the defendant and as a result she feared for her safety. This conclusion was based upon the testimony of the complainant and the unusual route taken by the employee on the morning of this incident.
In our independent review of this record we must determine whether the conclusions reached by the Commission were arbitrary and capricious or manifestly wrong. Hanson v. Louisiana Racing Commission, 436 So.2d 1308 (La.App., 4th Cir. 1984), writ den. 443 So.2d 592.
Plaintiff contends that the appointing authority failed to prove, by a preponderance of the evidence, the existence of cause for termination and the impairment of the public service.
CAUSE
Plaintiff maintains that the Commission failed to prove that he harassed Ms. Jones.
The Commission found that the appointing authority had failed to prove that plaintiff used vulgar language towards Ms. Jones or that he had made any obscene gestures towards her. The Commission did find that the authority successfully proved that the plaintiff had followed the complainant and she was caused to fear for her safety. These conclusions are supported by the record.
Ms. Jones testified that after she blew her horn at Newkirk and he did not move, that she waited and then drove around him. He thereafter proceeded to follow her along her school bus route. She has three stops on her route and she was proceeding to her second stop when this incident occurred. She testified that Newkirk followed her down approximately 4 or 5 streets for a period of 15-20 minutes. She stated that when she stopped her vehicle so did Newkirk and when she turned so did he. She also stated that she even proceeded down certain streets she does not normally travel, in an attempt to evade him. She testified that she feared he was going to follow her home so she drove to the Seventh District Police Station to complain.
Based upon this evidence there existed cause for disciplinary action to be taken against the plaintiff.
IMPAIRMENT OF PUBLIC SERVICE
The next issue for consideration is whether these activities by the plaintiff had a real and substantial relation to and impaired the efficient operation of the public service.
The record reveals that on the date in question, the logs of the various pumping stations show that the plaintiff visited the Pines Village Station at 7:15, the Crowder Road Station at 7:30, the Lamb Road Station at 8:05, the American Marine Station at 8:25, the Victoria Station at 8:40 and the Plum Orchard Station at 9:07, the Dodt Street Station at 9:20, the America Station at 9:35, the Wilson Station at 9:50, the Lawrence Station at 10:15 and the Lamb Road Station again at 10:45.
According to Charles Hartman, the plaintiff's supervisor, the pattern of visitation taken by the plaintiff deviated from the pattern set down by his department and it resulted in a waste of travel time.
Although Hartman maintained the department had a prescribed pattern of visitation for its employees to follow, he could not say that the plaintiff had been informed of this fact. Additionally the plaintiff and a fellow worker, Faxton Thurman, specifically denied that they were instructed to follow a set pattern when visiting the various pumping stations in their district. *629 Thurman testified that a worker was only required to inspect all stations in his district within an eight hour period. Newkirk testified that there was no fixed pattern of inspection but if a particular station needed attention, he would inspect it first.
In this case the plaintiff inspected all the stations in his district within the time prescribed. The pattern utilized did not significantly impair the efficient operation of the public service, so as to warrant a termination action. Additionally, the plaintiff's prior record of disciplinary actions would not warrant termination as those incidents were not similar in nature to the current conduct and may not be used to result in a cumulative effect justifying dismissal. Moreover, to utilize the prior conduct as a basis for termination would in effect punish the appellant twice for the same offense.
Since we find that the Commission has failed to prove by a preponderance of the evidence such an impairment to the efficiency of the public service as to warrant termination, we hereby reverse and set aside the plaintiff's termination. We do, however, find that these actions warrant the suspension previously imposed upon the plaintiff and we affirm the suspension.
For the reasons assigned the ruling of the Civil Service Commission upholding the plaintiff's suspension is affirmed. The ruling is reversed insofar as it maintained the plaintiff's termination from employment and the plaintiff is ordered reinstated with back pay from the effective date of the completion of his suspension, August 7, 1984 and with retention of all ancillary benefits and status, however subject to a credit and set-off for all wages and salaries earned by appellant while in private employment during the period of separation following completion of his suspension. R.S. 49:113. Each party shall bear his own costs.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.