505 So.2d 119 (1987)
Conard L. JAMES
v.
SEWERAGE AND WATER BOARD OF NEW ORLEANS
No. CA-5829.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1987.
Conard James, New Orleans, for plaintiff-appellee.
Leonard W. Crooks, Associate Counsel, Sewerage and Water Bd. of New Orleans, New Orleans, for defendant-appellant.
Before CIACCIO, WARD and ARMSTRONG, JJ.
CIACCIO, Judge.
The Sewerage and Water Board of New Orleans appeals a decision of the Civil Service Commission of New Orleans which reversed a five-day suspension of Conard James and suggested a reprimand instead.
*120 We reverse and uphold the five-day suspension.
Mr. James appealed his suspension to the Commission. The Commission assigned the appeal to a hearing examiner. A record of the proceedings was compiled, including a transcript of the hearing. Three members of the Commission reviewed this record and rendered a unanimous opinion reversing the suspension and suggesting a reprimand instead. The Board's appeal now places that record before this court for review.
The decision of this court is based upon an independent review of the record to determine whether the conclusion reached by the Commission is arbitrary or capricious or clearly wrong. See Abadie v. Department of Streets, 480 So.2d 425 (La. App. 4th Cir.1985) writ denied, 481 So.2d 1351 (La.1986), and cases cited therein at page 426.
Conard James was working for the Board as a pumping plant operator. As a PPO his general responsibilities were to supervise his helper and to operate and maintain the pumping station to which he was assigned. These responsibilities included such ministerial duties as keeping the station log book, as well as regular equipment checks and maintenance procedures, and upkeep of the station house and grounds with tasks of grass cutting, trash pick up, sweeping, etc. At all relevant times Mr. James was working an eight hour, 7 a.m. to 3 p.m., shift.
On Saturday, August 17, 1985, Mr. Charles Hartman, Drainage and Sewerage Pumping Supervisor, visited Station No. 6 where Mr. James was assigned as operator. Upon his arrival at around 9:20 a.m., Mr. Hartman could not gain entry to the station house because all of the doors were locked. Testimony at the hearing suggested that a locked station house was neither unusual nor against any regulation or policy.
Approximately five minutes after his arrival Mr. Hartman was admitted to the station house by Mr. James's helper. He entered to find the Saturday morning cartoons on television and the morning newspaper scattered about the kitchen floor and table. Under Board policy, which is written and maintained in a policy handbook in each station house as required reading for all personnel, "watching television is a privilege extended to rotating shift personnel after hours in a manner which does not interfere with performance of required duties."
Checking the station log, Mr. Hartman found that no entries had been made since 7:00 a.m. He found the plywood storm boards lying on the station floor. Outside he found the area around the station littered with trash and the grass approximately knee high.
On Wednesday, August 21, 1985, at about 2:40 p.m., Mr. Hartman again visited Mr. James's work station. He found that assigned work had not been performed. He noted that only a small portion of the grass around the station had been cut.
The above recounted incidents prompted a consideration of disciplinary action, which included an investigation of Mr. James's work history. Mr. James's work history with Sewerage and Water Board contained several incidents of poor work performance for which he had been reprimanded and warned of more severe discipline if his performance did not improve. At the appeal hearing the Sewerage and Water Board established the following incidents:
1) November 30, 1984, Mr. James was reprimanded for allowing his helper to leave the station before completing the required shift change station checks. He was warned about this unsatisfactory job performance and lack of supervision of subordinates and told that future incidents could result in more severe disciplinary action;
2) February 13, 1985, Mr. James was warned concerning his failure on January 27, 1985, to make proper log entries regarding overtime work. He was told to review policy memo No. 47, and that future violations would not be tolerated and would result in more severe disciplinary action;

*121 3) March 6, 1985, Mr. James was reprimanded for failing to make proper log entries on March 1, 1985, concerning a tardy worker and overtime work. He was advised that future violations would result in more severe disciplinary action.
On September 27, 1985, Mr. Harold Katner, Executive Director of the Sewerage and Water Board, sent Mr. James a letter advising him that he was suspended without pay effective Thursday, October 2, 1985, through Monday, October 7, 1985. In this letter Mr. Katner outlined Mr. James's history of unsatisfactory work performance, including the two recent incidents of August 1985 for which he was being suspended. He concluded by writing:
Because of your failure to properly perform your duties, and to properly supervise the individuals under your direction, your supervisor has recommended disciplinary action in the form of a suspension without pay. After reviewing your entire work record I see no reason to disagree with your supervisor's recommendation. Please be advised that if your work record does not show immediate improvement more severe disciplinary action, possibly including dismissal, may result.
At the hearing Mr. James offerred explanations for his apparently unsatisfactory performance. For August 17 he states that he was preparing for an inside tour scheduled for 10 a.m. and had not yet had time to complete the outside work or tidy the kitchen. For August 21 he states that the grass was too high for the use of a conventional lawn mower, one of the two mowers was inoperable, and the heat of the day slowed down the workers.
There was also some discussion of a helper improperly attired on August 21. This worker testified that he had taken off his sweat-soaked shirt in order to put on a dry one before leaving work.
The Commission found that Mr. James's explanations were reasonable. We find that they fail to explain why on the morning of August 17, if everyone was busy preparing for an inside tour, the television was on and the morning paper was scattered about the kitchen. Also unexplained are why, on the afternoon of August 21 twenty minutes before shift's end, assigned tasks remained uncompleted, a worker was preparing to leave in the face of incomplete tasks, and the grass remained essentially uncut.
We do not imply that Mr. James had the burden of proof regarding his actions. The appointing authority has the burden of proving legal cause for the disciplinary action taken. La. Const. of 1974 Art. X Sec. 8(A). We simply find unpersuasive Mr. James's defense to the Board's proof of his unsatisfactory job performance.
The Constitution provides for appellate review of both law and facts, and we give great weight to the factual conclusions of the trier of fact. La. Const. of 1974 Art. X Sec. 12. We do not consider the Commission's evaluations of Mr. James's explanations to represent factual conclusions. To the extent the Commission concluded as fact that Mr. James did not demonstrate unsatisfactory job performance, we find that conclusion clearly wrong.
The Commission did find that Mr. James's failure to make log entries as required on an hourly basis was in violation of policy. The Commission concluded that Mr. James should be reprimanded, then cautioned him "that future claims of supervisory negligence will be dealt with more severely on appeal."
It is not the job of the Commission to decide who should be disciplined how. The appointing authority is charged with the operation of his department. He is the one who must run the department, an obviously necessary part of which is dismissing or disciplining employees. While he may not do so without cause, he may, and indeed must, within the exercise of sound discretion, dismiss or discipline an employee for sufficient cause. The Commission is not charged with such operation or such disciplining. Joseph v. Department of Health, 389 So.2d 739 (La.App. 4th Cir. 1980); Branighan v. Department of Police, 362 So.2d 1221 (La.App. 4th Cir.1978), writ denied, 365 So.2d 247 (La.1978).
*122 The legal basis for any change in a disciplinary action can only be that sufficient cause for the action was not shown by the appointing authority. The protection of civil service employees is only against firing or other discipline without cause. La. Const. of 1974 Art. X Sec. 8(A). Cause justifying a one-day suspension may not justify dismissal, and thereforeand in that sensethe Civil Service Commission's authority "to hear and decide" disciplinary cases, La. Const. of 1974 Art. X Sec. 12, includes authority to reduce, reverse or affirm a penalty. The Commission does not have authority to reduce or reverse a penalty except upon a determination that there is insufficient cause for the greater penalty. Branighan v. Department of Police, supra.
The Commission found that Mr. James violated policy by failing to properly keep the station log, a violation for which he had been previously reprimanded more than once. Futher, despite its evaluations of Mr. James's explanations as reasonable, the Commission apparently considered Mr. James's actions to be in the nature of "supervisory negligence." Again, a charge for which Mr. James had been previously reprimanded and for which the Commission threatened more severe treatment for future incidents.
Each occasion of discipline by the appointing authority must be based upon previously undisciplined misbehavior, for an employee cannot be twice disciplined for a single dereliction. Hamlett v. Division of Mental Health, 325 So.2d 696 (La.App. 1st Cir.1976). But once an actionable dereliction has occurred, the appointing authority, in the exercise of sound discretion, may consider previous derelictions and the discipline then imposed when determining the appropriate severity of discipline to be imposed for the current, as yet undisciplined, misbehavior. See for example, Abadie v. Department of Streets, supra, and McGee v. Sewerage and Water Board of New Orleans, 396 So.2d 430 (La.App. 4th Cir. 1981). In this case the appointing authority, after considering Mr. James's history of similar derelictions for which he had been reprimanded and warned of more severe discipline for future violations, decided to impose a more severe discipline of a five-day suspension.
Legal cause for disciplinary action exists if the facts found by the Commission disclose that the conduct of the employee impairs the efficiency of the public service. Abadie v. Department of Streets, supra. The Commission found Mr. James derelict in keeping the station log as required. On this finding alone the Commission should have concluded, considering Mr. James's history of reprimands and warnings for similar derelictions, that the appointing authority had demonstrated sufficient legal cause for disciplinary action more severe than another reprimand and warning. Futher, considering the appointing authority's discretion in matters of discipline, a five-day suspension under the circumstances of this case is not too severe so as to amount to an abuse of discretion. The Commission should not have substituted its collective judgment for that of the appointing authority.
Also, in light of our review and conclusion that Mr. James did not explain away the proof of his unsatisfactory job performance, we find the five-day suspension clearly within the appointing authority's discretion, especially when considering Mr. James's history and the warnings he received that future violations would result in more severe discipline.
For the reasons stated, we reverse the decision of the Civil Service Commission, and dismiss Mr. James's appeal to the Commission at his cost.
REVERSED.