977 So.2d 180 (2008)
Nancy PARKER
v.
DEPARTMENT OF POLICE.
No. 2007-CA-1546.
Court of Appeal of Louisiana, Fourth Circuit.
January 24, 2008.
*181 Frank G. Desalvo, Desalvo, Desalvo & Blackburn, APLC, New Orleans, LA, for Nancy Parker.
Victor L. Papai, Jr., Assistant City Attorney, Penya Moses-Fields, City Attorney, Joseph V. Dirosa, Jr., New Orleans, LA, for Department of Police.
(Court Composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, Judge LEON A. CANNIZZARO, JR.)
LEON A. CANNIZZARO, JR., Judge.
In this appeal, the defendant/appellant, the New Orleans Police Department ("NOPD"), seeks review of a decision by the New Orleans Civil Service Commission ("CSC") reducing the period of suspension imposed on the plaintiff/appellee, New Orleans Police Officer Nancy Parker ("Officer Parker") for professional misconduct. Upon review of the record and applicable law, we affirm the decision of the CSC.

FACTS AND PROCEDURAL HISTORY
The facts are undisputed. Officer Parker was hired by the NOPD in October 2002. She was promoted in February 2004 to her status as Police Officer I, and assigned to the 4th District.
On or about August 28, 2005, the NOPD was placed on emergency activation status due to the approach of Hurricane Katrina. The hurricane made landfall on Monday, August 29, 2005. Officer Parker remained on duty until Thursday, September 1, 2005 when, following the expiration of a twelve-hour shift at 6:00 a.m., she traveled to Baton Rouge to provide emergency funds and provisions to her family. Officer Parker's husband and six children, ranging in ages from one to eight years of age,[1] had been living in the family compact car for four days since evacuating from the city. Prior to her departure, Officer Parker took efforts to contact her four immediate supervisors in order to advise them of her intentions to leave the city, but her efforts were to no avail.[2]
Upon arriving in Baton Rouge, Officer Parker attended to her family's needs by providing monetary assistance and clothing, as well as locating a shelter. Since she had not slept in over twenty-four (24) *182 hours, Officer Parker elected to spend the night in Baton Rouge with her family, rather than immediately returning to New Orleans for her next scheduled shift that same evening. She left Baton Rouge at noon the following day, Friday, September 2, 2005, with the intention of making her next scheduled shift that night. However, due to traffic and other obstacles, Officer Parker missed the first two hours of her ten-hour shift, arriving at the 4th District Police Station at 8:00 p.m.
Several weeks later, NOPD Superintendent Edwin Compass ordered all NOPD commanders to submit a list of personnel under their command who neglected to report for duty or who left their assignments without authorization. Following an administrative investigation, Officer Parker was cited as having abandoned her duties for two days, Thursday, September 1 through Saturday, September 2, 2005.[3] A hearing was conducted before representatives of the Operations and Public Integrity Bureaus on January 25, 2006, wherein Officer Parker was afforded the opportunity to explain her conduct and offer mitigating evidence. Finding the absence of such evidence, it was recommended to the Superintendent of Police that Officer Parker be suspended for thirty (30) days stemming from her violation of Departmental Internal Rule 4 relative to neglect of duty[4] and conduct contrary to Rule IX, Section 1, of the Rules of the CSC.[5] In a letter dated January 30, 2006, NOPD Superintendent Warren Riley advised Officer Parker of his imposition of a thirty-day suspension for her misconduct. Subsequently, she filed an appeal with the CSC pursuant to Article X, Section 8(A) of the Constitution of the State of Louisiana, 1974.
The CSC assigned the matter to a hearing examiner, who conducted a formal hearing. On November 7, 2006, the CSC issued its decision denying in part and granting in part the findings and discipline rendered by the NOPD. It concluded the NOPD sustained its burden of proving by a preponderance of evidence that Officer Parker was disciplined for cause. It opined that she neglected her duty when she failed to immediately return to her next shift after caring for her family. The CSC further stated that, as a first responder, Officer Parker's primary responsibility was to her job, and that she must *183 be held accountable for the consequences of her actions. Notwithstanding, the CSC concluded, in light of the mitigating circumstances, the recommended thirty-day suspension was not commensurate with the violation and, as such, reduced the suspension to ten (10) days. The NOPD timely filed its appeal seeking review of the CSC's reduction in the sanction imposed on Officer Parker.

LAW AND DISCUSSION
As its only assignment of error, the NOPD contends the CSC acted arbitrarily and capriciously in substituting its own judgment for that of the NOPD by reducing the imposed discipline. It asserts the discipline imposed by the NOPD was commensurate with the violation at issue.
In Deshotel v. Department of Police, 07-0363, p. 2 (La.App. 4 Cir. 10/24/07), 970 So.2d 1106, this court articulated the standard of review in civil service disciplinary matters:
An employee who has gained permanent status in the classified city civil service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. The employee may appeal from such disciplinary action to the CSC. The burden of proof on appeal, as to the facts, shall be on the appointing authority. La. Const. art. X, § 8 (1974); Walters v. Department of Police of New Orleans, 454 So.2d 106, 112-113 (La.1984). The CSC's decision is subject to review on any question of law or fact upon appeal to the appropriate court of appeal. La. Const. art. X § 12(B).
The CSC has a duty to independently decide, from the facts presented, whether the appointing authority had good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed was commensurate with the dereliction. Walters, 454 So.2d at 113. Legal cause for disciplinary action exists whenever an employee's conduct impairs the efficiency of the public service in which that employee is engaged. Cittadino v. Department of Police, 558 So.2d 1311 (La.App. 4 Cir. 1990). The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of activity occurred, and that such activity bore a real and substantial relationship to the efficient operation of the public service. Id. at 1315.
In reviewing the CSC's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, this court should not modify the CSC's order unless it is arbitrary, capricious, or characterized by an abuse of discretion. Walters, 454 So.2d at 114. "Arbitrary or capricious" means that there is no rational basis for the action taken by the CSC. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647.
The CSC has the authority to "hear and decide" disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const. art. X, § 12; Fihlman v. New Orleans Police Department, 00-2360 (La.App. 4 Cir. 10/31/01), 797 So.2d 783. The legal basis for any change in a disciplinary action can only be that sufficient cause for the action was not shown by the appointing authority. The protection of civil service employees is only against firing (or other discipline) without cause . . . Id. at p. 5, 797 So.2d at 787.
[Emphasis added; italic in original.]
Applying these principles, it is uncontested that lawful cause exists for taking disciplinary *184 action against Officer Parker for her neglect of duty. As such, the only issue to be addressed is whether the CSC was arbitrary or capricious, or abused its discretion, in finding insufficient cause to support the discipline imposed by the NOPD and significantly reducing such.
As noted, following an administrative hearing, the NOPD found the absence of mitigating evidence to support a sanction less than a suspension of thirty (30) days, the minimal baseline discipline adopted by the NOPD for its officers who engaged in the least serious professional misconduct during the time relative to Hurricane Katrina. In contrast, the CSC in its written decision determined that mitigating evidence warranted a downward deviation from the sanction imposed by the NOPD. While the CSC did not specifically articulate what mitigating factor(s) it found compelling, a review of the record supports its findings as both reasonable and logical. The record includes Officer Parker's testimony at the CSC hearing wherein she testified as to her personal dilemma giving rise to the instant proceedings. Specifically, when asked on cross-examination why she left to go to Baton Rouge, Officer Parker testified as follows:
I got several phone calls from my husband saying that he didn't have anywhere to go, he didn't have any money, which I knew of that when he vacated. I have six kids. All of my kids were in a compact car, sleeping in a car. I was upset about it. I told the people that I was with about it. They collected money. They gave me money. I tried to contact sergeants. I couldn't do that. I went out to bring my family the money. I brought them the money. I did spend a couple of hours with my family and I came back to work.
CSC hearing transcript at pp. 7 & 8.
Later when asked what she did while she was gone, Officer Parker testified:
I had to put gas in my car and my husband's car. I had to get my kids a change of clothing, to a shelter and safe. If I would have been able to do that over the phone or prior to me leaving, I would have done it. But there was no way that I could have done anything with me being here and my family being where they were.
Id. at pp. 9 & 10.
Finally, Officer Parker was questioned by counsel for the NOPD about her actions during the time in question in comparison to other police officers:
Q: ". . . [M]any police officers lost their homes; correct?
A: That's correct.
Q: But they all didn't leave and go off on their own; correct?
A: I didn't leave because I didn't want to be here. I left because I didn't know the condition that my family was in.
Q: Okay.
A: My oldest child is 8. My youngest one at the time was 1. Okay?
Q: And I'm sure there were many police officers that have children age 8 and children age 1.
A: There's a lot of police officers that knew exactly where their families were or was able to give them money to get to safety. I was one of the unfortunate ones that I could not do that.
Id. at pp. 15 & 16.
We are cognizant of the fact the superintendent of police, the appointing authority in this case, is charged with the operation of his department, a necessary part of which is dismissing or disciplining employees for sufficient cause. Further, the CSC is not his supervisor and, as such, not charged with such operation or such disciplining. *185 Deshotel, 970 So.2d at 1108; James v. Sewerage and Water Board of New Orleans, 505 So.2d 119, 121 (La.App. 4 Cir.1987). Notwithstanding, upon a detailed review of the record, we find the CSC took into account the individual officer, more particularly, her motive for leaving, and her service during the period relevant to the storm. Therefore, we agree with the CSC's legal finding that the discipline imposed by the NOPD is not commensurate with the infraction and that there was a rational basis for the reduction. According to Officer Parker's testimony, she missed a total of ten (10) hours of shift work. We find the CSC's ten-day suspension to be proportionate in light of the mitigating factors at issue in these proceedings. This sanction would represent a suspension of one (1) day for each hour of missed work.
While we do not condone or seek to minimize the severity of Officer Parker's misconduct, we recognize she, like so many others affected by Hurricane Katrina, was faced with extraordinary and inhumane circumstances beyond her control. It is unfortunate that any dedicated first responder[6] would have to choose between the safety of his/her family and their profession. This is especially relevant to the instant matter when the NOPD was truly the guardian of public safety charged with maintenance of order in a devastated and chaotic city. Further, we are mindful that this is not an officer who simply deserted the citizens of New Orleans. Save the few hours she tended to her family's needs, Officer Parker remained at her post under the most difficult and demanding of circumstances arising from the aftermath of Hurricane Katrina.
Thus, we conclude the CSC neither erred nor abused its discretion in reducing the sanction imposed on Officer Parker from thirty (30) days to ten (10) days.

DECREE
Accordingly, the decision of the CSC is affirmed.
NOTES
[1] While the CSC's written decision states Officer Parker had five children at the time in question, her testimony at the hearing provides she had six children. See, CSC hearing transcript at p. 8.
[2] According to the record, by September 1, 2005, NOPD officers were physically working shift details. However, due to the emergency activation, they were "on duty" twenty-four (24) hours per day and being paid for such.
[3] The CSC's written decision states Officer Parker missed one entire shift on Friday, September 2, 2005 and the first two hours of her shift on Saturday, September 3, 2005. See, CSC written decision at pp. 1-2. The letter of discipline from Superintendent Riley also states Officer Parker returned to duty on Saturday, September 3, 2005 after being gone for two days. However, the documentary evidence and Officer Parker's testimony at the CSC hearing indicates she missed one entire shift on the evening of Thursday, September 1, 2005 and the first two hours of her evening shift on Friday, September 2, 2005. See, CSC hearing transcript at p. 9.
[4] NOPD Internal Rule 4, entitled "Performance of Duty", provides in pertinent part: "A. Each member, because of his grade and assignment, is required to perform certain duties and assume certain responsibilities. A member's failure to properly function in either or both of these areas constitutes a neglect of duty."
[5] Rule IX, entitled "Disciplinary Actions", of the Rules of the CSC states, in pertinent part:

Section 1. Maintaining Standards of Service.
1.1 When an employee in the classified services is unable or unwilling to perform the duties of his/her position in a satisfactory manner, or has committed any act to the prejudice of the service, or has omitted to perform any act it was his/her duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstance to maintain the standards of effective service . . .
[6] We note that the record is absent any evidence Officer Parker has a prior history of a disciplinary infraction during her tenure with the NOPD.