ROSS HENNESSEY
v.
DEPARTMENT OF FIRE
No. 2009-CA-0590
Court of Appeals of Louisiana, Fourth Circuit.
September 2, 2009
Not Designated for Publication
LOUIS L. ROBEIN, Jr., KEVIN R. MASON, ROBEIN URANN SPENCER PICARD & CANGEMI, APLC Counsel for Plaintiff/Appellee.
Penya Moses-Fields City Attorney NOLAN P. LAMBERT Chief Deputy City Attorney VICTOR L. PAPAI, Jr. Assistant City Attorney Counsel for Defendant/Appellant.
Court composed of Chief Judge ARMSTRONG, Judge GORBATY, Judge BONIN.
DAVID S. GORBATY, Judge
This is an appeal by the Department of Fire for the City of New Orleans ("NOFD") from a decision of the Civil Service Commission ("Commission") granting a limited appeal to Captain Ross Hennessey ("Capt. Hennessey"). For the reasons set forth below, we affirm.

FACTS AND PROCEDURAL HISTORY
The NOFD hired Capt. Hennessey on October 2, 1983, and promoted him to Fire Captain in 1996.
In February of 2007, Capt. Hennessey was stationed at Engine Company Number 9, located at the corner of Decatur Street and Esplanade Avenue. The station located at Decatur Street and Esplanade Avenue responds to calls up to Toulouse Street in the French Quarter.
Capt. Hennessey testified that on February 19, 2007, Lundi Gras, he and other firemen responded to a call. The firemen parked the fire truck at Orleans Avenue and Bourbon Street. As the firemen returned to the fire truck, Mardi Gras revelers asked to take a photograph with them. An anonymous individual posted the photograph on "craigslist", an internet site, approximately one year later. The photograph depicts Capt. Hennessey standing directly behind one female. The photograph also depicts an Italian firefighter, in town for a "ride-along" with Engine 9, with his arm around the second female. The photograph reveals that the female Mardi Gras revelers wore only body paint and pasties on their upper bodies.
Superintendent Charles Parent (Supt. Parent) testified that Deputy Chief Gary Frank provided a copy of the photograph to him, and in June of 2008, an investigation began. After the investigation, the NOFD charged Capt. Hennessey with violating the rules and regulations of the NOFD. Specifically, the NOFD charged Capt. Hennessey with violating Article 3, Section 3.1.3.1, which provides, "The Captain shall be responsible for the proper discipline of members also, the efficiency and operation of the unit under his/her command." The NOFD further charged Capt. Hennessey with violating Article 5, Section 5.2.27, which provides, "Members shall be governed by the customary and reasonable rules of proper behavior and shall not commit any act that brings reproach upon themselves or the Department."
A Peer Review Committee met and held a hearing on August 3, 2008. Thereafter, the Peer Review Committee found Capt. Hennessey guilty of both charges and recommended a six hour suspension for violating Article 3, Section 3.1.3.1 and a twelve hour suspension for violating Article 5, Section 5.2.27.
After reviewing the information presented at the Peer Review Committee hearing, Supt. Parent imposed a six hour suspension for the violation of Article 3, Section 3.1.3.1. Supt. Parent deviated from the twelve hour suspension recommended by the Peer Review Committee and demoted Capt. Hennessey to the classification of Firefighter for the violation of Article 5, Section 5.2.27, as well for the violation of Article 3, 3.1.3.1.
Capt. Hennessey appealed the discipline imposed by the NOFD. In due course, a hearing officer was appointed to receive testimony.
Before the hearing officer, Supt. Parent testified that he disciplined Capt. Hennessey as Capt. Hennessey interfered with the efficiency of the NOFD by bringing a bad reflection on the NOFD. Supt. Parent opined the picture made the NOFD look like an "unprofessional group of buffoons." Supt. Parent acknowledged that he did not receive a complaint from a member of the public regarding the picture.
Supt. Parent also testified that the firemen were not in their proper location and were surrounded by people, which would slow their response time in the event of a call. Supt. Parent further stated part of a captain's job "is to be instructing his younger underlings on proper behavior and proper firefighting."
Capt. Hennessey admitted the other firemen in the Lundi Gras photograph were under his command. Capt. Hennessey testified that he has been asked to pose for thousands of photographs, both in and out of the French Quarter, when he has gone out on calls. Capt. Hennessey admitted he and the other firemen were in uniform at the time the Lundi Gras photograph was taken.
Capt. Hennessey further identified photographs taken during the Red Dress Race. Capt. Hennessey testified the NOFD approved the use of a hose by the participants. Photographs taken during the event show scantily attired men and women wetting one another down and posing with the fire hose.
The parties stipulated that if Deputy Chief Joseph Buras were called to testify, he "would testify that he was ordered by his command to provide not only water, but the use of a hose for the participants of the Red Dress Race." Further, while Deputy Chief Buras questioned the order, the participants of the race were allowed to use the hose for whatever purpose they chose.
Capt. Steve Cordes (Capt. Cordes) testified he was previously stationed at 317 Decatur Street. Capt. Cordes further stated that while it was not condoned, the companies that bordered the French Quarter were always out in the crowd during the Mardi Gras season. Additionally, Capt. Cordes noted that women like to take pictures with the firemen while they are in uniform and sometimes the women are wearing less than the women in the picture at issue. Capt. Cordes testified that other administrations "never encouraged, but they knew it went on, and they just overlooked it." Capt. Cordes stated District Chief Chris Michaels not only knew these sorts of activities occurred, but that District Chief Michaels participated in the activities.
After reviewing the testimony and evidence, the Commission granted the appeal for the limited purpose of reducing the Appellant's discipline to the recommendation of the Peer Review Committee, namely a six hour suspension for violating Article 3, Section 3.1.3.1 and a twelve hour suspension for violating Article 5, Section 5.2.27. In its decision, the Commission stated:
We have no hesitancy agreeing with Fire Superintendent Charles Parent's conclusion that circulation of the picture on the internet brought "reproach" to the New Orleans Fire Department. The internet site carrying the photograph identifies the New Orleans Fire Department, and an observer could readily reach the conclusion that some firemen in the "Big Easy" are cavorting around with partially clad women while on duty and in uniform during Mardi Gras.
Though we do not condone Appellant's [Capt. Hennessey] bad judgment, we are not convinced that the disciplinary step of demotion was commensurate with Appellant's misconduct. There is no credible evidence in the record that he has previously compromised Fire Department ethical standards or that the isolated incident during the Mardi Gras season adversely affected the performance of his duties as a fireman. Appellant testified that it is common for civilians to want to be photographed with firemen-out of respect for their position-and that the Department has never explicitly condemned such a practice. Under the right circumstances such photographs can generate good will for the Fire Department. Unfortunately that was not the case here. Though Appellant should be disciplined, we think demotion from the position of Captain, a position which he has properly performed for 12 years, was unjustified.

STANDARD OF REVIEW
The Commission has authority to "hear and decide" disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const. art. X, §12; Pope v. New Orleans Police Dept., XXXX-XXXX, p.5 (La. App. 4 Cir. 4/20/05), 903 So.2d 1, 4. The appointing authority is charged with the operation of its department and it is within its discretion to discipline an employee for sufficient cause. The Commission is not charged with such discipline. The authority to reduce a penalty can only be exercised if there is insufficient cause for imposing the greater penalty. Pope, XXXX-XXXX, pp.5-6, 903 So.2d at 4.
The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority. Cure v. Dept. of Police, XXXX-XXXX, p.2 (La. App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094, citing Marziale v. Dept. of Police, XXXX-XXXX, p.10 (La. App. 4 Cir. 11/8/06), 944 So.2d 760, 767. The protection of civil service employees is only against firing (or other discipline) without cause. La. Const. art. X, §12; Cornelius v. Dept. of Police, XXXX-XXXX, p.8 (La. App. 4 Cir. 3/19/08), 981 So.2d 720, 724, citing Fihlman v. New Orleans Police Dept., 2000-2360, p.5 (La. App. 4 Cir. 10/31/01), 797 So.2d 783, 787.
The decision of the Commission is subject to review on any question of law or fact upon appeal to this court, and this court may only review findings of fact using the manifestly erroneous/clearly wrong standard of review. La. Const. art. X, §12; Cure, XXXX-XXXX, p.2, 964 So.2d at 1094. In determining whether the disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this court should not modify the Commission order unless it was arbitrary, capricious, or characterized by an abuse of discretion. Id. A decision of the Commission is "arbitrary and capricious" if there is no rational basis for the action taken by the Commission. Cure, XXXX-XXXX, p.2, 964 So.2d at 1095.

DISCUSSION
The NOFD argues Capt. Hennessey's conduct was detrimental to the efficient operation of the NOFD. Further, the NOFD argues the punishment imposed was commensurate with Capt. Hennessey's dereliction. Therefore, the NOFD concludes lawful cause existed for the NOFD's decision to demote Capt. Hennessey and the Commission erred in reducing the punishment imposed by the NOFD.
In this case, Capt. Hennessey did not file an appeal or answer the appeal. Under Rule 1-3 of the Uniform Rules, Courts of Appeal, our review is limited to issues which were submitted to the trial court and which are contained in specifications or assignments of error. See Brown v. Harrel, 98-2931, pp. 5-6 (La. App. 4 Cir. 8/23/00), 774 So.2d 225, 229. Therefore, our review is limited to whether the Commission erred in reducing the punishment imposed by the NOFD.
In support of its argument that the Commission acted arbitrarily and capriciously in granting the limited appeal and reducing the punishment imposed by the NOFD, the NOFD cited Whitaker v. New Orleans Police Dept., XXXX-XXXX, p.6 (La. App. 4 Cir. 9/17/03), 863 So.2d 572, 576. Therein, the Court stated "the Commission should give heightened regard to the appointing authorities that serve as special guardians of the public safety and operate as quasi-military institutions where strict discipline is imperative." Id.
The Commission found demotion unwarranted as Capt. Hennessey properly performed his duties for twelve years; the Department has never explicitly condemned the practice of firemen posing for photographs; there was no evidence Capt. Hennessey previously compromised NOFD ethical standards; or that the isolated incident adversely affected his duties as a fireman. Indeed, Capt. Cordes testified that engaging in the sort of conduct at issue here is well-known throughout the NOFD.
In Parker v. Dept. of Police, XXXX-XXXX, pp.7-8 (La. App. 4 Cir. 1/24/08), 977 So.2d 180, 185, this Court affirmed the Commission's reduction of the penalty imposed upon an officer. As Hurricane Katrina approached, the police department was placed on emergency activation status. While police officers were working twelve-hour shifts, they were "on-duty" twenty-four hours per day. Id., p.2, 977 So.2d at 181. Officer Parker worked all of her shifts until September 1, 2005. After her shift ended, she attempted to contact her supervisors to let them know she was headed to Baton Rouge to provide emergency funds to her family. Officer Parker received messages from her husband that he and the six children were sleeping in a car. When she arrived in Baton Rouge, Officer Parker located shelter for her family. By the time this was accomplished, Officer Parker had been awake for over twenty-four hours. Officer Parker spent the night with her family and missed one regularly scheduled shift. Due to the obstacles presented by the aftermath of Hurricane Katrina, Officer Parker took longer than anticipated to return the following day and missed the first two hours of her shift. Id., pp.2-3, 977 So.2d at 181-182. The Superintendent imposed a thirty-day suspension for Officer Parker's neglect of duty. The Commission reduced the penalty to a ten-day suspension. The Court noted the Commission took into account the individual officer involved as well as the surrounding circumstances. Id., p.4, 977 So.2d at 182-183. The Court specifically stated it was not condoning or minimizing the severity of the conduct. Id., p.7, 977 So.2d 185.
In this instance, we note the Commission took into account Capt. Hennessey's record as well as the surrounding circumstances. We recognize the NOFD serves as a special guardian of the public safety and operates as a quasi-military institution where strict discipline is imperative. However, while we do not condone Capt. Hennessey's conduct or seek to minimize the conduct, we believe a demotion is too harsh a penalty for conduct that is well-known throughout the NOFD and not explicitly condemned. The NOFD presented no evidence that Capt. Hennessey previously compromised NOFD ethical standards. Further, the NOFD presented no evidence that the isolated incident adversely affected his duties as a fireman. Under the facts presented herein, a demotion is not commensurate with the dereliction. Therefore, we find a rational basis exists for the decision of the Commission to grant a limited appeal and reduce the penalty imposed to the twelve hour suspension recommended by the Peer Review Committee.

CONCLUSION
Accordingly, for the foregoing reasons, the decision of the Commission is affirmed.
AFFIRMED