**EDDIE WILLIAMS, JR.**　　　　　*　　　　NO. 2021-CA-0517

**VERSUS**　　　　　　　　　　*

**SEWERAGE & WATER**　　　　*　　　　COURT OF APPEAL
**BOARD**　　　　　　　　　　　　　FOURTH CIRCUIT

　　　　　　　　　　　　　*

　　　　　　　　　　　　　　　STATE OF LOUISIANA

　　　　　　* * * * * * *

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9155
Hearing Officer  No Hearing Officer, Hearing Officer
* * * * * *
**Chief Judge Terri F. Love**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Roland L. Belsome, Judge Paula A. Brown)

Eddie D. Williams, Jr.
11679 Pressburg Street
New Orleans, LA 70128

　　COUNSEL FOR PLAINTIFF/APPELLANT

Ashley Ian Smith
SEWERAGE AND WATER BOARD OF NEW ORLEANS
625 St. Joseph Street, Room 201
New Orleans, LA 70165

Darryl Harrison
SEWERAGE AND WATER BOARD OF NEW ORLEANS
625 St. Joseph Street, Room 201
New Orleans, LA 70165

Yolanda Y. Grinstead
SEWERAGE AND WATER BOARD OF NEW ORLEANS
625 St. Joseph Street, Room 201
New Orleans, LA 70165

　　COUNSEL FOR DEFENDANT/APPELLEE

　　　　　　　　　　　　　　　　**AFFIRMED**
　　　　　　　　　　　　　　　**February 9. 2022**

TFL

RLB

PAB

This appeal arises from a civil service disciplinary action. Sewerage and

...er Board of New Orleans ("Board") employee Eddie Williams, Jr. was issued a

three-day suspension for the dissemination of allegedly unprofessional and

inflammatory emails outside of his chain of command. Mr. Williams appealed the

suspension to the Civil Service Commission ("Commission"), claiming that he

only sent these emails because the Board ignored his allegations of retaliation

against a supervisor. Following a hearing, the Commission issued a decision

denying his appeal. The Commission found that the Board carried its burden of

showing the occurrence of the unprofessional emails, which impaired the efficient

operation of the Board. The Commission further found that the three-day

suspension was commensurate with Mr. Williams' infraction.

Mr. Williams appealed the Commission's decision, arguing that the

Commission improperly switched to a new justification for disciplinary action,

ignored his testimony, and undermined the Board's own legal cause for discipline.

Mr. Williams also alleged perjury on the part of the Board, Commission, and

1

hearing examiner, insofar as these parties implied that the Board responded to his allegations of retaliation.

Upon review, we hold that the Commission was not arbitrary or capricious in finding that the Board carried its burden of proof to demonstrate legal cause for the disciplinary action. The Board demonstrated that Mr. Williams sent inflammatory and unprofessional emails outside of his chain of command, which undermined the Board's efficient operations by negatively impacting the chain of command and violating the Board's professional conduct policy. We also hold that the Commission was not arbitrary and capricious in finding that the Board carried its burden of showing that the penalty of a three-day suspension was commensurate with the infraction, in line with the Board's progressive discipline policy. We find no merit in Mr. Williams' contention that there was a change in the portrayal of the emails sufficient to undermine the Board's legal cause for discipline. Lastly, we find that perjury was not committed because the Board did respond to Mr. Williams' complaint regarding retaliation.

Accordingly, we affirm the Commission's judgment.

**FACTUAL AND PROCEDURAL HISTORY**

Mr. Williams has been employed by the Board for thirty-two years, most recently as a Management Development Supervisor I. On January 10, 2019, Mr. Williams filed an internal grievance with the Board's Employee Relations Division complaining that his supervisor, Fred Tharp, used abusive language towards him. On January 14, 2019, Mr. Tharp directed that Mr. Williams be transferred to the

2

Technical Services division to "assist in the development of a much needed accounting and tracking system for contracts, invoice processing and project status." Mr. Tharp noted that the transfer was prompted by many requests that the division was unable to meet and that Mr. Williams possessed the experience and abilities to properly address this issue. Two weeks later, Mr. Williams complained to Employee Relations that the move was instigated by Mr. Tharp as retaliation for his original complaint. A grievance officer within Employee Relations responded that this retaliation complaint would be addressed in an upcoming grievance meeting. That grievance meeting and mediation took place on February 4, 2019.

On March 22, 2019, the Board's Acting Human Resources Senior Executive issued a second level review letter to Mr. Williams concurring with the findings of the grievance officer who conducted the meeting. The second level review letter summarized and clarified the position of the grievance officer, noting that the original grievance of abusive language by Mr. Tharp was substantiated by a witness statement. The letter stated that Mr. Tharp acknowledged the inappropriateness of his language and committed to using appropriate language in the future. In regards to the complaint of retaliation, the grievance officer and human resources executive found that Mr. Tharp acted reasonably and sufficiently explained the rationale for the move, and that the move was properly within Mr. Tharp's area of responsibility and authority. The matter was marked closed.

Although the matter was marked closed, Mr. Williams proceeded to send emails outside of his immediate chain of command complaining that the Board had

not responded to the alleged retaliation and expressing dissatisfaction with Board management, among other things. On October 8, 2019, Mr. Williams was instructed to cease sending "offensive and inflammatory" emails outside of his chain of command. The next day, Mr. Williams was issued a written Letter of Reprimand directing him to cease using the Board's time, equipment, and email system to complain to parties outside of his chain of command, to maintain a respectful and professional tone in future correspondence, and to refrain from calling employees names or inappropriately characterizing them.

After that letter was issued, Mr. Williams transmitted an additional sixteen emails outside of his chain of command with similar content to the emails he had been instructed to desist sending. For example, Mr. Williams accused Mr. Tharp of being "a completely untouchable prima donna," and equated his actions to "administrative payroll grand theft."[1] Mr. Williams also labeled the Board's response to his complaints "pathetic" and "out of some gothic novel."[2] In another

---

[1] The email stated, in part: "In-effect (excuse my French) administrative payroll grand theft, all in broad daylight, which is the very relaxed manner in which Mr. Tharp has perpetrated all of his gross misdeeds against this same employee. In humble acknowledgment (though not recognition) of Mr. Tharp's apparent lofty stature within this venerable City government organization as a completely untouchable prima donna, I submit this to your attention only as an FYI."

[2] The email stated, in part: "Note that the name of the perpetrator, Fred Tharp, is never mentioned, nor is there even any hint that this was in fact a fraudulent activity. All in broad daylight! An elementary school student could see through this! This is the very reason that Fred Tharp will not hesitate to put his superiors and others on the spot by committing these atrocities. He knows that they are all committed (pledged?) to bend over backwards in order to cover up for him, even at the expense of an employee who he is obviously targeting, even at the expense of subverting the supposed ethical standards of the Sewerage and Water Board of New Orleans as well as those of the Civil Service Department of New Orleans. Who is this guy come amongst us as completely untouchable, and completely un-restrainable, and whose many questionable actions must be covered at all costs? Just examine for a moment these pathetic email responses to my serious complaint of Tharp's fraudulent demotion pronouncements to me. Both of these emails would receive a grade of "F" from any reputable school teacher, let alone college professor. They both fail miserably to deal with the issue at hand. The Fraud. The first email even stoops to including a veiled threat ("Beware the memo of July 2, 2019! Remember that

4

email, Mr. Williams denounced the Acting Human Resources Senior Executive as an "absolute dictator." On March 3, 2020, the Board issued a Notice of Intent to Recommend a Three Day Suspension to Mr. Williams, based on Mr. Williams' continued missives outside of his chain of command. On March 16, 2020, the Board issued a letter to Mr. Williams informing him that, pursuant to the Board's progressive discipline policy, he was suspended for three days without pay.

Mr. Williams filed a timely appeal of his suspension with the Civil Service Commission, which held a hearing on the matter on July 14, 2020. On July 13, 2021, the Commission rendered its decision denying Mr. Williams' appeal. The Commission found that the Board carried its burden of showing that the complained-of activity, unprofessional and inflammatory emails to individuals outside of Mr. Williams' chain of command, occurred and impaired the efficient operation of the Board. The Commission also found that the penalty imposed by the Board was commensurate with the infraction. It is from this decision that Mr. Williams filed the present appeal.

**DISCUSSION**

*Standard of Review*

Employees who attain permanent classification in the civil service system may only be subject to discipline for cause, expressed in writing. La. Const. art. X, § 8(A). The Commission is not charged with the operation or disciplining of

---

one?) A nice touch. However, I would appreciate it much better if this were out of some gothic novel, instead of part of the reality of today's Sewerage and Water Board of New Orleans and the Civil Service Department of New Orleans."

employees. *Whitaker v. New Orleans Police Dept.*, 03-0512, p. 5 (La. App. 4 Cir. 9/17/03), 863 So. 2d 572, 575. Such responsibility rests with the appointing authority, which possesses the discretion to discipline an employee for sufficient cause. *Id.* "Legal cause for dismissal exists if the facts found by the Commission disclose employee conduct prejudicial to the public service or detrimental to its efficient operation." *Lee v. Sewerage and Water Bd. of New Orleans*, 517 So. 2d 1223, 1224 (La. App. 4 Cir. 1987) (*citing Walters v. Dept. of Police of City of New Orleans*, 454 So. 2d 106 (La. 1984); *Lombas v. Dept. of Police*, 467 So. 2d 1273 (La. App. 4 Cir. 1985)).

If an employee appeals a disciplinary action to the Commission, appointing authorities "must meet a two-pronged burden in order to prove that it had good and lawful cause for the disciplinary action taken: (1) proof that the complained-of conduct occurred, and (2) proof that the conduct impaired the efficiency of the department." *Burrell v. Sewerage and Water Bd. of New Orleans*, 06-0067, p. 4 (La. App. 4 Cir. 10/4/06), 942 So. 2d 1158, 1161 (citing *Beba v. Dept. of Fire*, 05-1209, p. 6 (La. App. 4 Cir. 5/31/06), 933 So. 2d 871, 875). "The appointing authority must prove its case by a preponderance of the evidence." *Whitaker*, 03-0512, p. 4, 863 So. 2d at 575 (citing *Cittadino v. Dept. of Police*, 558 So. 2d 1311, 1315 (La. App. 4 Cir. 1990)).

Civil Service Commission decisions are "subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is

located." La. Const. art. X, § 12(B). The appellate standard of review in these matters is summarized as a multifaceted function:

> First, as in other civil matters, deference will be given to the factual conclusion of the Commission. Hence, in deciding whether to affirm the Commission's factual finding, a reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review. *Walters*, 454 So. 2d at 114.

> Second, in evaluating the Commission's determination as to whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, this Court should not modify the Commission's order unless it is arbitrary, capricious or characterized by an abuse of discretion. *Id.* "Arbitrary or capricious" means that there is no rational basis for the action taken by the Commission. *Bannister v. Dept. of Streets*, 95-0404 p. 8 (La. 1/16/96), 666 So. 2d 641, 647.

*Whitaker*, 03-0512, p. 3, 863 So. 2d at 574.

### Assignment of Error #1

In his first assignment of error, the appellant contends that the Commission improperly switched to a new justification for disciplinary action, deviating from the specific justification laid out by the Board in its Notice of Intent.

This assignment of error is moot. The appellant has conceded that he raised this issue incorrectly in reference to another disciplinary matter being addressed in a separate appeal.

### Assignment of Error #2

In his second assignment of error, the appellant questions "[w]hether the Commission can legally render a decision in a case where in the entire sworn testimony of one of the parties has been ignored, nor any portion of that testimony cited by the Commission."

7

The appellant has not pointed to any law or other authority requiring that the Commission cite a party's testimony in reviewing the appeal of a disciplinary action taken against a civil service employee. The Commission's duty in these matters is to determine whether legal cause exists such that the appointing authority is able to prove that the complained-of conduct occurred, and that the conduct impaired the efficiency of the department. *Burrell*, 06-0067, pp. 3-4, 942 So. 2d at 1160 (citing *Beba*, 05-1209, pp. 4-5, 933 So. 2d at 875-76).

In this case, the complained-of conduct was the transmission of multiple inflammatory and unprofessional emails outside of the appellant's chain of command. The appellant does not deny that he sent the emails in question outside of his chain of command, however, he disputes that the language of the emails was unprofessional or inflammatory. "Unprofessional" is defined as "not exhibiting a courteous, conscientious, or generally businesslike manner in the workplace." *Unprofessional*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/unprofessional (last visited Feb. 2, 2022). "Inflammatory" is defined as "tending to excite anger, disorder, or tumult." *Inflammatory*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/inflammatory (last visited Feb. 2, 2022).

The hearing examiner probed the nature of the language used in the emails and whether it rose to the level of inflammatory and unprofessional. Excerpts of the emails were read aloud during the hearing, including a lengthy email in which

the appellant likened the Board to a "supermax prison," referred to himself in third person as "subject to the most severe persecution," and wove a narrative implying that contract manager engineers in the appellee's employ were absconding on a yacht to Tahiti to avoid involving themselves in his "sordid fate." The Board Disciplinary Specialist testified that this language, in addition to other language used by the appellant in his emails, was unprofessional, inflammatory, and necessarily disruptive to the Board's operations. We agree that repeatedly leveling accusations of this nature at multiple colleagues and comparing the workplace to locations such as a super-maximum security prison is discourteous, would excite anger in the minds of the many Board employees who were criticized, and therefore disrupt the Board's operations.

Given the distinctively unprofessional language employed by the appellant and the fact that he did not dispute that the emails were sent outside of his chain of command, the Commission was not arbitrary or capricious in finding that legal cause existed for the disciplinary action.

The Commission was further obligated to determine whether the Board showed that punishment was commensurate with the infraction. *Royal v. Sewerage & Water Bd.,* 13-1528, p. 3 (La. App. 4 Cir. 4/30/14), 139 So. 3d 1039, 1041 (quoting *Lapene v. Dept. of Police*, 11-0902, p. 4 (La. App. 4 Cir. 1/25/12), 81 So. 3d 998, 1000). The Board, as the appointing authority, is tasked with its own operations and disciplining employees disrupting its operations is "an obviously necessary part" of that management. *James v. Sewerage and Water Bd. of New*

9

*Orleans*, 505 So. 2d 119, 121 (La. App. 4 Cir. 1987).  The Board "may, and indeed must, within the exercise of sound discretion, dismiss or discipline an employee for sufficient cause." *Id.*, (citing *Joseph v. Dept. of Health*, 389 So. 2d 739 (La. App. 4 Cir. 1980); *Branighan v. Dept. of Police*, 362 So. 2d 1221 (La. App. 4 Cir. 1978). "Repeated improper conduct after lesser disciplinary action has been taken, the totality of individual lesser offenses or even a single particular aggravated incident have all been found to constitute legal cause for dismissal." *Newkirk v. Sewerage and Water Bd. City of New Orleans*, 485 So. 2d 626, 627 (La. App. 4 Cir. 1986).

In this case, the discipline pursued was a three-day suspension.  The appellee informed the appellant on three occasions to desist sending the emails in question, or risk the next level of discipline, in keeping with the appellee's progressive discipline policy.  Despite these warnings, the appellant continued to send unprofessional and inflammatory emails, sometimes during the workday with Board equipment.  The Board Disciplinary Specialist testified that this conduct negatively impacted the chain of command and violated the appellee's professional conduct policy, thereby impairing its efficient operations.

In light of these circumstances, we hold that the Commission was not arbitrary and capricious in finding that the penalty of a three-day suspension was commensurate with the infraction.

Although the appellant does not deny his behavior, he attempted to provide a justification for his behavior by contending that he only wrote the emails because the appellee did not investigate his complaint of retaliation.  However, the record

indicates that a grievance officer acknowledged the retaliation complaint, addressed it in a grievance mediation meeting, and found that retaliation did not occur. A secondary level of review confirmed this finding.

The appellant further argues that the Commission compounded the appellee's inaction on his retaliation complaint by ignoring his testimony regarding retaliation in its decision. This is inaccurate. On the first page of the decision, the undersigned Commissioners noted that they reviewed the record in its entirety, including the transcript. On that same page, the decision cites to the hearing transcript in stating that "Williams believes he has suffered retaliation from Fred Tharp for filing an internal grievance against Tharp." Additionally, the transcript reveals that the hearing examiner allowed the appellant to discuss the retaliation complaint at length, over the objections of the appellee's counsel, because it appeared that "his position is going to be that his subsequent emails related to that [the grievance] somehow."

Significantly, even if it were true that the appellee ignored the appellant's complaint of retaliation and the Commission did not cite to his testimony, the appellant's remedy is not a sequence of unprofessional and inflammatory emails outside of the chain of command. Avenues to dispute retaliatory transfers or demotions exist. Civil Service Rule II, Section 4.1; See *Noya v. New Orleans Fire Dept.*, 96-2612, p. 4 (La. App. 4 Cir. 4/23/97), 693 So. 2d 279, 281. The scope of the matter before the Commission was limited to whether the appellee could show that the emails constituted legal cause for discipline and whether the appellee

demonstrated that discipline was commensurate with the infraction. The Commission properly discharged that responsibility.

*Assignment of Error #3*

In his third assignment of error, the appellant queries whether a change in portrayal of a Plaintiff's behavior by the Board between the hearing and the time of the Commission's decision should be reflected in that decision.

The appellant claims that the Commission contradicted the appellee's characterization of his emails. He contends that the Commission described his emails as "allegations of retaliation and requests for investigation into retaliation," thereby invalidating the appellee's statements that the emails were unprofessional and inflammatory.

The Commission makes multiple references to the emails. Initially, the Commission's decision describes the emails as "multiple long emails to Sewerage & Water Board management, attorneys, and others critical of the Sewerage & Water Board's response to his request to investigate retaliation." In another instance, the decision stated "Williams admitted at this hearing that he sent multiple emails outside his chain of command asking for an investigation into his allegations of retaliation." These descriptions both appear at the beginning of the decision, on the second page, and are followed by a deeper analysis of the emails, including an ultimate finding that the language contained in the emails was unprofessional and inflammatory. The appellant's claim that the Commission's language contradicted the appellee isolates generalized introductory language and

12

ignores the greater context of the decision's analysis and conclusions. Therefore, there was no change in the portrayal of the emails sufficient to contradict the appellee's argument that the emails were unprofessional and inflammatory.

The appellant also raises allegations of perjury. First, he argues that inconsistencies between the appellee's and Commission's characterizations of his emails amounts to perjury. Second, he claims that the hearing examiner and the Commission perjured themselves in implying, in sworn testimony, (1) the appellee responded to the appellant's emails regarding retaliation; (2) the appellant was aware of the appellee's response; (3) the appellant reviewed the appellee's response and was dissatisfied and frustrated.

Perjury is "the intentional making of a false written or oral statement in or for use in a judicial proceeding, any proceeding before a board or official, wherein such board or official is authorized to take testimony." La. R.S. 14:123; La. R.S. 33:2426. False testimony during a Commission hearing is subject to a fine of "not less than one hundred dollars, nor more than ten thousand dollars," imprisonment, or both, ineligibility for city service, and possible forfeiture of an employee's position, depending on the nature of his or her employment. La. R.S. 33:2426; La. R.S. 33:2432.

The first instance of alleged perjury was addressed above. As there was no inconsistency between the appellee's characterizations of the appellant's emails and the Commissions' descriptions of those same emails, perjury is inapplicable.

Examining the second instance of alleged perjury, the appellant disputes that the appellee ever responded to his complaint of retaliation. However, the record reveals that a grievance officer acknowledged the retaliation complaint, addressed it in the February 4, 2019 grievance mediation meeting, and found that retaliation had not occurred. A secondary level of review examined these findings, confirmed them, and marked the matter closed. The Commission and hearing examiner did not perjure themselves in referencing this response. Nor did they perjure themselves in acknowledging that the appellant was aware of the response, given his presence at the mediation and his receipt of the secondary review letter summarizing the mediation.

Therefore, the retaliation complaint was responded to, the appellant received that response, and no perjury was committed by the Commission or hearing examiner. The fact that the appellee did not respond to his many unprofessional emails is not relevant, as the Commission and hearing officer were clearly referencing the appellee's earlier response to the retaliation.

**CONCLUSION**

For the above-mentioned reasons, we hold that the Commission was not arbitrary or capricious in finding that the appellant's emails were unprofessional, impaired the appellee's efficient operations, and that the penalty of a three-day suspension was commensurate with the appellant's infraction in sending the unprofessional emails. Furthermore, we find that the Commission's

portrayal of the complained-of activity did not negate the appellee's legal cause.

Lastly, we hold that perjury was not committed.

**AFFIRMED**